## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Anthony Cesare, Elizabeth Donatucci and Taylor Kennedy, individually and on behalf of themselves and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>vs.<br><br>Champion Petfoods USA Inc. and Champion Petfoods LP<br><br>                                   Defendants. | Case No. _____<br><br><br><br><br>CLASS ACTION<br>(Jury Trial Demanded) |

### CLASS ACTION COMPLAINT

Plaintiffs Anthony Cesare ("Cesare") and Elizabeth Donatucci ("Donatucci") (collectively "Plaintiffs"), individually and on behalf of all other similarly situated persons and entities, upon personal knowledge of facts pertaining to them and information and belief as to all other matters, by and through undersigned counsel, hereby file this Class Action Complaint against Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively "Champion" or "Defendants"), and allege as follows:

### INTRODUCTION

1.      Champion sells a variety of premium-priced dog foods throughout the United States. Its dry dog food products ("Products") are sold under the "Orijen" and "Acana" brand names. Champion's packaging prominently states that the Products are "Biologically Appropriate" and contain "fresh, regional ingredients." Champion's packaging further represents that Orijen "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." Consumers pay a premium

for what Champion advertises and labels as premium products. A 25-pound bag of "Orijen Original Biologically Appropriate Dog Food" can cost $80 or more—up to four times the price of national brand competitors.

2.      Contrary to Champion's representations regarding the Products, the Products contain excessive levels of harmful heavy metals, including arsenic, lead, cadmium, and mercury.

3.      As a result of Champion's misrepresentations, Plaintiffs and other putative Class members were harmed by paying for the advertised Products and receiving only inferior and contaminated products.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(d), because this matter was brought as a class action under Fed.R.Civ.P. 23, at least one proposed Class member is of diverse citizenship from Champion, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

5.      Venue is proper pursuant to 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred within this District.

## THE PARTIES

6.      Plaintiff Anthony Cesare is a citizen and resident of the Commonwealth of Pennsylvania residing in Greensburg, Pennsylvania. He purchased Orijen and Acana dry dog food products, including Orijen Regional Red, Orijen Tundra, Orijen Puppy Large Breed, Orijen Senior, Orijen Fish, Acana Appalachian Ranch Regional, Acana Heritage Meats, and Acana Ranchlands Regional for his three dogs George, Gus and Buster from Chewy.com. In addition, Plaintiff Cesare purchased Orijen Regional Red from Leone Pet Supply in Pennsylvania. Plaintiff Cesare purchased

2

the Products because he believed they were healthy, high quality products for his pets. Plaintiff Cesare would not have purchased the Products or would not have paid as much for the Products were he aware of the excessively high levels of toxic heavy metals in the Products. Plaintiff Cesare did not receive what he was promised and what he paid for.

7.      Plaintiffs Elizabeth Donatucci and Taylor Kennedy are citizens and residents of the Commonwealth of Pennsylvania residing together in Oakmont, Pennsylvania. They purchased Acana dry dog food products, including Acana Appalachian Ranch Regional for their dog Hyde from Chewy.com.  Plaintiffs purchased the Products because she believed it was a healthy, quality product for her pet. Plaintiffs would not have s the Products or would not pay as much for the Products were they aware of the excessively high levels of toxic heavy metals in the Products. Plaintiffs did not receive what they were promised and what they paid for.

8.      Defendant Champion Petfoods USA Inc. is incorporated in Delaware. Champion Petfoods USA Inc.'s headquarters is in Auburn, Kentucky.

9.      Defendant Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business located in Edmonton, Alberta, Canada. Champion Petfoods LP owns, operates, and controls Champion Petfoods USA Inc.

10.     Defendants formulate, develop, manufacture, market, and distribute dry dog food products under the brand names Orijen and Acana throughout the United States.

## FACTUAL ALLEGATIONS

11.     Champion touts its products as "The World's Best Petfood." Champion produces a variety of dry dog foods under the Orijen and Acana brands and sells them throughout the United States, including within the Commonwealth of Pennsylvania.

3

12.     The packaging of Orijen Original dry dog food touts the food as "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs – sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

13.     The packaging further states that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

14.     The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

15.     Contrary to these representations, the Products are not composed of high quality ingredients fit for human consumption and are not biologically appropriate. To the contrary, the Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.

16.     According to a white paper[1] published by Champion, the Products contain the following average concentrations of heavy metals:

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---|---|---|---|---|
| Average Concentration | 890 | 230 | 90 | 20 |

[1]     http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf (last accessed March 26, 2018).

17.    These concentrations are excessive, dangerous, and render Champion's representations regarding the Products, including the packaging of the Products, false and misleading.

18.    For example, of the 11 pounds of "fresh, raw, or dehydrated animal ingredients" in a 13-pound bag of Orijen Original, the package claims to contain 8.5 pounds of chicken, turkey, and eggs—over 77% of the "fresh, raw, or dehydrated animal ingredients."

19.    Chicken, turkey, and eggs consumed by humans contain no or only negligible amounts of arsenic, lead, cadmium, and mercury:[2]

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---|---|---|---|---|
| Chicken | 3 | 0 | .3 | 0 |
| Turkey | 6 | 0 | .1 | .1 |
| Eggs | 0 | .4 | 0 | .1 |

20.    Arsenic, lead, cadmium, and mercury are toxic to dogs. A dog experiencing lead poisoning may exhibit vomiting, diarrhea, lethargy, loss of appetite, abdominal pain, regurgitation, weakness, hysteria, seizures, and blindness.[3] A dog experiencing arsenic poisoning may exhibit vomiting, diarrhea, abdominal pain, lethargy, staggering, bright red blood in feces, loss of consciousness, and death—or more subtle symptoms from chronic exposure like poor appetite and weight loss.[4] Heavy metals tend to accumulate in dogs and other animals, so long-term exposure to even small quantities of heavy metals can cause deleterious health effects.

---

[2]    This table was prepared using data from the FDA's Total Diet Study, revised April 2017, available at:
https://www.fda.gov/downloads/Food/FoodScienceResearch/TotalDietStudy/UCM184301.pdf (last accessed March 27, 2018). Data for chicken, turkey, and eggs comes from mean concentrations for TDS Food No. 240, 26, and 37, respectively.
[3]    https://www.petmd.com/dog/conditions/digestive/c_dg_lead_poisoning (last accessed March 27, 2018).
[4]    https://www.petmd.com/dog/conditions/digestive/c_dg_arsenic_poisoning (last accessed March 27, 2018).

21.     Ingredients with the heavy metal concentrations found in Champion's Products are not suitable for consumption by humans, animals, and are not of the advertised and represented quality.

## CLASS ACTION ALLEGATIONS

22.     Plaintiffs bring this class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3) on behalf of the following proposed class:

> All persons and entities who purchased a Champion dry dog food product for end use and not for resale within the Commonwealth of Pennsylvania (the "Class").

Excluded from the Class are Defendants, including any entity in which Defendants have a controlling interest, is a subsidiary of Defendants, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

23.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions involving the same claims.

### Numerosity—Federal Rule of Civil Procedure 23(a)(1)

24.     The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, Class members number in the thousands.

### Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)

25.     This action involves the following common questions of law or fact which predominate over any potential questions affecting only individual Class members:

(a)     Whether Champion engaged in the wrongful conduct as alleged herein;

(b)     Whether Champion misrepresented the Products to Plaintiffs and the other Class members;

6

(c)     Whether Champion breached the express warranties it made to Plaintiffs and the other Class members;

(d)     Whether Champion breached implied warranties;

(e)     Whether Plaintiffs and the other Class members are entitled to actual damages; and

(f)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution, declaratory, and injunctive relief.

26.     Champion engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical misrepresentations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate in this action.

### Typicality—Federal Rule of Civil Procedure 23(a)(3)

27.     Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and all other Class members were damaged as a result of the uniform misconduct described above. Additionally, identical claims and legal theories are asserted on behalf of Plaintiffs and the other Class members.

### Adequacy—Federal Rule of Civil Procedure 23(a)(4)

28.     Plaintiffs' interests are aligned with and do not conflict with the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### Superiority—Federal Rule of Civil Procedure 23(b)(3)

29.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, and other financial detriment

suffered individually by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Champion, making it impracticable for Class members to individually seek redress for Champion's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## **CLAIMS**

### **Count I**
### **Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 *et seq.* (the "UTPCPL")**

30.     Plaintiffs adopt and reallege paragraphs 1 through 29 of this Class Action Complaint.

31.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 *et seq.* (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

32.     Defendants are a manufacturer, marketer, seller, and distributor of the Products.

33.     Defendants markets, and sells the Products with express warranties created on the Products' packaging, labeling, advertisements, marketing literature, and website regarding the qualities, ingredients, and benefits of the Products.

34.     Plaintiffs and Class members purchased the Products for personal, household, or family use.

35. Defendants misrepresented the quality of the Products and the ingredients contained therein on their labels in violation of the UTPCL.

36. Defendants' deceptive, false and misleading statements deceived Plaintiffs and Class members and deceived a substantial segment of the target consumer audience in violation of the UTPCL.

37. The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4)(v), (vii), and (xxi) of the UTCPL.

38. In violation of the UTPCPL, Defendant omitted and concealed material facts from Plaintiffs and other Class members regarding the quality, characteristics, and benefits of the Products as wells as its fitness for consumption.

39. The omissions and misrepresentations described herein were likely to deceive consumers into purchasing the Products.

40. Defendants knew or reasonably should have known that its representations about the Products were false, that the Products contained excessive levels of unsafe heavy metals and otherwise were not as warranted and represented by Defendants.

41. Defendants knew or should have known, at the time the Products left their control that the Products contained excessive levels of unsafe heavy metals and were not made of ingredients fit for consumption by humans or canines. Additionally, Defendants knew or should have known that excessive levels of heavy metals are not safe for ingestion by humans and canines, and, as such, the consumption of the Products did not provide the represented and warranted benefits.

42. Defendants' deception is material as it influenced purchasing and payment decisions.

9

43.     Plaintiffs and Class members have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

44.     Defendants intended that Plaintiffs and other Class members rely on their misrepresentations, as their reliance was crucial to Defendants being able to command a premium price for the Products.

45.     Defendants deceived and continue to deceive consumers about the quality and ingredients of its Products as well as the fitness of these products for ingestion. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendants is continuing, with no indication that it will cease.

46.     Defendants' actions in connection with the manufacture and distribution of the Products as set forth herein, evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

47.     Defendants acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

48.     Defendants intended that Plaintiffs and the other Class members rely on the acts of concealment, omissions and misrepresentations regarding the nature of the Products so that Plaintiffs and the other Class members would purchase the Products.

49.     Plaintiffs and the other Class members relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Products.

50.     Plaintiffs and the other Class members, had Defendant disclosed to them all material information regarding the Products, would have considered the omitted information material to their decision to purchase the Products at the price they paid.

10

51.     As a direct proximate result of Defendants' misrepresentations and omissions, Plaintiffs and the other members of the Class suffered direct economic loss by purchasing the Products at a premium, and unwarranted, price. Had Plaintiffs and other members of the Class known the heavy metal content of the Products, they would not have bought the Products, or they would not have paid the premium price that they did.

52.     Plaintiffs and Class Members are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

53.     Defendants' conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiffs and members of the Class to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

## Count II
## Breach of Express Warranty

54.     Plaintiffs adopt and reallege paragraphs 1 through 53 of this Class Action Complaint.

55.     Defendants marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Class.

56.     Defendants created express warranties on the Products' packaging, marketing materials, and its website. Defendants expressly warranted, advertised, and represented to Plaintiffs and members of the Class that the Products are:

(a)     natural, fit for human consumption, and made from "Biologically Appropriate", and Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish and vegetables;

(b)     nutritious, superior quality, pure, natural, healthy and safe for consumption;

11

(c)     "provide{e} a natural source of virtually every nutrient your dog needs to thrive;" and

(d)     "guaranteed to keep your dog healthy, happy and strong."

57.     Defendants made these express warranties regarding the Products' quality, ingredients, and fitness for consumption on its website, in its marketing statements and on its Products' packaging and labeling in connection with the sale of the Products. to Plaintiffs and members of the Class.

58.     Plaintiffs and members of the Class reasonably relied on Defendants' marketing materials, packaging and website, in making their decision to purchase the Products.

59.     Defendants' warranties became part of the basis of the bargain Plaintiffs and members of the Class entered into when they purchased the Products.

60.     Defendants breached its express warranties to Plaintiffs and the members of the Class in that the Products (as advertised, represented and warranted) are not natural or suitable for consumption by humans, animals or canines, contain excessive levels of unsafe heavy metals. In short, the Products' quality, ingredients and suitability for consumption are not what was represented, promised and warranted by Defendants. As a result of Defendants' breach of its express warranties, Plaintiffs and members of the Class were damaged in the amount of the purchase price they paid for Products, in an aggregate amount to be proven at trial.

61.     Defendants have been given ample notice of the nonconformities alleged herein through numerous consumer claims and complaints advising it of the presence of excessive unsafe heavy metals in the Products and dangers associated with its consumption. Despite being given such notice, Defendants have not cured the dangerous health risks associated with the consumption of the Products and still warrant through its marketing materials, packaging, and website that its' Products

12

are, *inter alia,* natural, safe, fit for consumption and guaranteed to keep dogs healthy, happy, and strong.

62.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the members of the Class have suffered actual damages in that they have purchased Products of inferior quality and ingredients as compared to how they were represented. The Products are worth far less than the price they paid and that they would not have purchased the Products at all if they had known of the true quality and ingredients of the Products.

63.     Plaintiffs, on behalf of themselves and the Class members, demand judgment against Defendants for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, and costs.

## Count III
## Breach of Implied Warranty

64.     Plaintiffs adopt and reallege paragraphs 1 through 63 of this Class Action Complaint.

65.     The Products are goods and Defendants, as the manufacturers, marketers, distributors, and sellers of the Products, are merchants within the meaning of the Uniform Commercial Code, as adopted in Pennsylvania.

66.     Defendants developed, manufactured, distributed, marketed, advertised, and sold the Products directly to or for the purpose of their eventual sale to end users for consumption by canines.

67.     Defendants impliedly warranted to Plaintiffs and members of the Class, prior to their purchase of the Products, that the Products were merchantable and reasonably fit for the purposes for which such products are used and that the product be acceptable in trade for the product description.

68.     Plaintiffs and members of the Class relied on Defendants' skill and judgment in selecting Defendants' Products to purchase. Moreover, Plaintiffs and members of the Class relied on

statements made on Defendants' packaging, product labels, on its website and in its marketing literature that Products were natural, safe and were fit for the ordinary purposes for which such Products are consumed by canines.

69.     Plaintiffs and the other Class members purchased the Products that were manufactured and sold by Defendants in consumer transactions. The implied warranty of merchantability attended the sale of the Products.

70.     To be merchantable, the products must be at least such as:

(a)     pass without objection in the trade under the contract description;

(b)     in the case of fungible goods, are of fair average quality within the description;

(c)     are fit for the ordinary purposes for which such goods are used;

(d)     run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(e)     are adequately contained, packaged, and labeled as the agreement may require; and

(f)     conform to the promises or affirmations of fact made on the container or label if any.

71.     The Products are not adequately contained, packaged and labeled because they are packaged as containing healthy, high quality ingredients, but instead contain excessive quantities of harmful heavy metals.

72.     The Products do not conform to the promises and affirmations of facts made on their containers, packaging and labels, website, and marketing literature because they do not consist of healthy, high quality ingredients that would be fit for human consumption or canines as their

14

packaging and labeling warrants. In fact, the Products are unfit for their intended use and not of merchantable quality.

73.     The Products do not pass without objection in the trade under the contract description.

74.     The Products are not of fair average quality within the description, are unfit for the ordinary purposes for which such goods are used, and are inadequately contained, packaged, and labeled.

75.     Defendants breached its duty by selling to Plaintiffs and other Class members' Products that were not merchantable. Plaintiffs and the other members of the Class did not receive the Products as warranted. The products they purchased were worth less than the products they were promised and expected. Plaintiffs as well as members of the Class relied on Defendant's implied warranties concerning the Products and sustained an ascertainable loss and financial injury resulting from Defendants' breach of those warranties.

76.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the members of the Class have suffered actual damages in that they have purchased Products of inferior quality and ingredients as compared to how they were represented. The Products are worth far less than the price they paid and that they would not have purchased the Products at all if they had known of the true quality and ingredients of the Products.

77.     Plaintiffs, on behalf of themselves and the Class members, demand judgment against Defendants for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, and costs.

## Count IV
## Fraudulent Omission

78.     Plaintiffs adopt and reallege paragraphs 1 through 77 of this Class Action Complaint.

79.     Defendants represented on the packaging of Orijen Original dry dog food that it is "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs—sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

80.     The packaging further represents that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

81.     The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

82.     Contrary to these representations, Defendants knew and failed to disclose that the Products are not composed of high quality ingredients fit for human consumption or biologically appropriate. Rather, the Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.

83.     The foregoing material facts were intentionally withheld from Plaintiffs and other members of the Class who purchased the Products.

84.     Plaintiffs and other members of the Class suffered damages as a result of their purchase of the Products.

85.     Plaintiffs, on behalf of themselves and the Class members, demand judgment against Defendants for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, and costs.

**Count V**
**Unjust Enrichment**

86.     Plaintiffs adopt and reallege paragraphs 1 through 29 of this Class Action Complaint.

87.     Plaintiffs and other members of the Class conferred a tangible economic benefit upon Defendants by purchasing the Products. Plaintiffs and other members of the Class would have expected remuneration from Defendants at the time this benefit was conferred had they known that the Products was not as promised.

88.     Plaintiffs and other members of the Class purchased Defendants' products to their detriment because they paid a premium price expecting the goods to conform to the representations on the Products' labels that the Products contained high quality, healthy ingredients that would be fit for human consumption. Had Plaintiffs and the other members of the Class known that the Products contained excessive quantities of heavy metals, they would not have paid the price they did. Plaintiffs and the other members of the Class did not receive the benefit of the bargain.

89.     Defendants knew of the actual ingredients of, and the percentage of heavy metals contained in, the Products. Defendants sold the Products at a premium price. Defendants are now retaining a benefit to the detriment of Class members. Allowing Defendants to retain the benefits of their inflated sales price while Plaintiffs and other members of the Class have the detriment of having paid a price they would not have paid had they not been deceived by Defendants' labels, violates the fundamental principles of justice, equity, and good conscience.

17

90.     It would be unjust or inequitable for Defendants to retain the benefits without restitution or disgorgement of monies paid to Defendants for the Products, or such other appropriate equitable remedy to Plaintiffs and Class members.

**Count VI**
**Negligent Misrepresentation**

91.     Plaintiffs adopt and reallege paragraphs 1 through 90 of this Class Action Complaint.

92.     Defendant had a duty to disclose to Plaintiffs and the Class the actual quality, and ingredients of the Products as well as its fitness for consumption.

93.     Defendants had a duty to disclose the presence of excessive levels of unsafe heavy metals and to warn of the dangers associated with their ingestion or consumption.

94.     During the Class Period, Defendants negligently represented, omitted, and concealed from consumers material facts relating to the quality and ingredients of the Products, including that the Products contained excessive levels of unsafe heavy metals and were not fit for human and canine consumption.

95.     Defendant made such false and misleading statements and omissions on its website, on the Products' packaging and labeling, and in its product literature and advertisements, with the intention of inducing Plaintiffs and Class members to purchase the Products.

96.     Defendants were careless in ascertaining the truth of its representations in that it failed to adequately test the Products to determine the effects of consumption of excessive levels of heavy metals on the health of humans and canines.

97.     Plaintiffs and the Class members were unaware of the falsity of Defendants' misrepresentations and omissions and justifiably relied on them in deciding to purchase the Products. Had Plaintiffs and Class members been made aware that Products contained excessive levels of unsafe

heavy metals, and do not provide the promised health benefits, they would not have purchased the Products at a premium price, but, instead, would have paid substantially less for the Products, or not purchased the Products at all.

98.     As a direct and proximate result of these misrepresentations and omissions of material facts by Defendants, Plaintiffs and Class members have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

**Count VIII**
**Injunctive Relief**

99.     Plaintiffs adopt and reallege paragraphs 1 through 98 of this Class Action Complaint.

100.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and Class members, thereby making final injunctive relieve appropriate.

101.     Defendants' conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for material facts in a clear attempt to sell a product that contains excessive levels of unsafe heavy metals and is not fit for human or canine consumption.

102.     Defendants persist in their deceptive and unfair marketing and sales practices concerning the Products to the detriment of consumers across the country, including Plaintiffs and Class members.

103.     If Defendants are allowed to continue with these practices, consumers—Plaintiffs and Class members—will be irreparably harmed in that they do not have a plain, adequate, or complete remedy at law to address all of the wrongs alleged in this complaint, unless injunctive relief is granted to stop Defendants' improper conduct concerning its marketing and sale of the Products.

104.    Plaintiffs and Class members are, therefore, entitled to an injunction requiring Defendants remedy its unfair and deceptive practices relating to the marketing and sale of the Products, as alleged herein, including the effects thereof.

105.    Plaintiffs and Class members seek an order from this Court requiring Champion to do the following:

    (a)    discontinue advertising, marketing, packaging and otherwise representing its Products as:

        i.    natural, fit for human consumption, and made from "Biologically Appropriate", and Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish and vegetables;

        ii.    nutritious, superior quality, pure, natural, healthy and safe for consumption;

        iii.    "provide{e} a natural source of virtually every nutrient your dog needs to thrive;" and

        iv.    "guaranteed to keep your dog healthy, happy and strong."

    (b)    undertake an immediate public information campaign to inform Plaintiffs and Class Members of the truth about the Products and Defendants' prior practices relating thereto; and

    (c)    correct any erroneous impression Plaintiffs and Class Members may have derived concerning the nature, characteristic, or qualities of the Products, including, without limitation, the placement of corrective advertising and providing written notice to the general public.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter an Order:

A.      Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B.      Appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

C.      Finding that Defendants engaged in the unlawful conduct alleged herein;

D.      Awarding Plaintiffs and the other Class members actual, compensatory, and consequential damages;

E.      Awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

F.      Awarding Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses as provided by the UTPCPL; and

G.      Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.


Date:   June 5, 2018                                    Respectfully submitted,

                                                         /s/ Charles E. Schaffer
                                                        Charles E. Schaffer
                                                        Daniel C. Levin
                                                        LEVIN SEDRAN & BERMAN, LLP
                                                        510 Walnut Street, Suite 500
                                                        Philadelphia, PA 19106
                                                        Telephone: (215)-592-1500

Facsimile:  (215) 592-4663
cschaffer@lfsblaw.com
dlevin@lfsblaw.com

Aaron Rihn, Esquire
ROBERT PEIRCE & ASSOCIATES, P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219-1918
Telephone:  (412)-281-7229
Facsimile:  (412) 281-4229
arihn@piercelaw.com

***Attorneys for Plaintiffs***