# EXHIBIT "A"
## Amended Class Action Complaint

EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Anthony Cesare, Elizabeth Donatucci and Taylor Kennedy, individually and on behalf of themselves and all others similarly situated, | Case No.: 2:18-cv-00744-CB |
| Plaintiffs, | |
| vs. | CLASS ACTION (Jury Trial Demanded) |
| Champion Petfoods USA Inc. and Champion Petfoods LP | |
| Defendants. | |

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs Anthony Cesare ("Cesare"), Elizabeth Donatucci ("Donatucci"), and Taylor Kennedy ("Kennedy"), (hereinafter collectively the "Plaintiffs"), individually and on behalf of all other similarly situated persons and entities, upon personal knowledge of facts pertaining to them and information and belief as to all other matters, by and through undersigned counsel, hereby file this Amended Class Action Complaint against Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively "Champion" or "Defendants"), and allege as follows:

### INTRODUCTION

1.     Champion sells a variety of premium-priced dog foods throughout the United States. Its dry dog food products ("Products") are sold under the "Orijen" and "Acana" brand names. Champion's packaging prominently states that the Products are "Biologically Appropriate" and contain "fresh, regional ingredients." Champion's packaging further represents that Orijen "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." Consumers pay a premium

price for Products that they believe are premium based on Champion's advertising and representations on the labeling of the Products. Additionally, because of the way Champion packages, advertises, and places its products in the super-premium dog food market, they intend for consumers to believe this. The substantial premium Champion charges can be as much as four times the price charged by national competitors (A 25-pound bag of "Orijen Original Biologically Appropriate Dog Food" can cost $80 or more while other products such as a thirty-three-pound bag of "Pedigree Adult Complete Nutrition" Dog Food is less than $20).

2.      Champion's representations to consumers regarding the Products were false and deceptive. The Products do not mirror what a dog would eat in the wild because they contain virtually no animal muscle meat and instead consist largely of animal waste and byproducts. The Products are not made from ingredients that are fresh and regionally sourced and, instead, contain ingredients often sourced from foreign suppliers and shipped through middle men throughout the continent. The Products are also not made from ingredients of a quality fit for human consumption, as evidenced by the fact that the Products contain levels of heavy metals exponentially higher than those found in foods consumed by humans.

3.      As a result of Champion's misrepresentations and/or omissions, Plaintiffs and the putative members of the proposed Class were harmed by paying for the advertised Products that were fundamentally different and less valuable than as marketed and represented to them and other consumers by Champion and, they received an inferior and contaminated product.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Champion, the proposed Class includes more than 100

members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

5.      Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims occurred within this District.

<u>**THE PARTIES**</u>

6.      Plaintiff Anthony Cesare is a citizen and resident of the Commonwealth of Pennsylvania residing in Greensburg, Pennsylvania. He purchased Orijen and Acana dry dog food products, including Orijen Regional Red, Orijen Tundra, Orijen Puppy Large Breed, Orijen Senior, Orijen Fish, Acana Appalachian Ranch Regional, Acana Heritage Meats, and Acana Ranchlands Regional for his three dogs George, Gus and Buster from Chewy.com. In addition, Plaintiff Cesare purchased Orijen Regional Red from Leone Pet Supply in Pennsylvania. Plaintiff Cesare purchased the Products because he believed Champion's representations that they were healthy, included high quality, fresh, biologically appropriate and regionally sourced ingredients, and the Products were premium dog food and high-quality food for his pets. Plaintiff Cesare would not have purchased the Products or would not have paid as much for the Products if he was aware of Champion's misrepresentations and omissions regarding the quality of the Products, their ingredients, and sourcing.  Champion's representations regarding the quality of the Products, their ingredients, and sourcing were false, misleading, and deceptive. Plaintiff Cesare relied on Champion's omissions and misrepresentations and believed he was purchasing premium high-quality Products which contained quality ingredients, that were biologically appropriate, regionally sourced, and the Products were a premium dog food of the highest quality. However, he purchased and received an inferior Product which was not of the quality represented by Champion and, as such, did not receive the benefit of his bargain.

3

7.      Plaintiffs Elizabeth Donatucci and Taylor Kennedy are citizens and residents of the Commonwealth of Pennsylvania residing together in Oakmont, Pennsylvania. They purchased Acana dry dog food products, including Acana Appalachian Ranch Regional for their dog Hyde from Chewy.com.  Plaintiffs purchased the Products because they believed and relied on Champion's representations that their Products are healthy and include high quality, fresh, biologically appropriate and regionally-sourced ingredients. Plaintiffs would not have purchased the Products or would not have paid as much for the Products if they were aware of Champion's misrepresentations and omissions regarding the quality of their Products, the ingredients used, and the sourcing of the ingredients. Champion's representations regarding the quality of the Products, their ingredients and sourcing were false, misleading, and deceptive.  Plaintiffs relied on Champion's omissions and misrepresentations and believed they were purchasing premium high-quality Products.  However, Plaintiffs purchased and received an inferior Product that was not as high quality as represented by Champion and, as such, Plaintiffs did not receive the benefit of their bargain.

8.      Defendant Champion Petfoods USA Inc. is incorporated in Delaware. Champion Petfoods USA Inc.'s headquarters is in Auburn, Kentucky.

9.      Defendant Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business located in Edmonton, Alberta, Canada. Champion Petfoods LP owns, operates, and controls Champion Petfoods USA Inc.

10.     Defendants formulate, develop, manufacture, market, and distribute dry dog food products under the brand names Orijen and Acana throughout the United States.

4

## FACTUAL ALLEGATIONS

11.     Champion touts its products as "The World's Best Petfood." Champion produces a variety of dry dog foods under the Orijen and Acana brands and sells them throughout the United States, including within the Commonwealth of Pennsylvania.

**Champion Falsely Markets its Products as Biologically Appropriate and Made from Healthy, Regionally Sourced Ingredients**

12.     A Champion product purchased by named Plaintiffs, which is known as Acana Appalachian Ranch Regional, states that the Product is "Biologically Appropriate," contains "Unmatched Regional Ingredients," uses ingredients that are "Never Outsourced," and is filled with ingredients that are "Delivered Fresh or Raw in Wholeprey ratios, and brimming with goodness and taste."

13.     The packaging of Orijen Original dry dog food touts the food as "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs – sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

14.     The packaging for the Orijen Original and Origen Senior Products included the following representations:

- FRESH or RAW and preservative-free

- ORIJEN features FRESH, RAW or DEHYDRATED INGREDIENTS, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods.

- FRESH REGIONAL INGREDIENTS GROWN CLOSE TO HOME – We focus on local ingredients that are ethically raised by people we know and trust, and delivered to our kitchens fresh or raw each day.

- PREPARED WITH PRIDE FROM TRUSTED REGIONAL INGREDIENTS

5

- AMERICA'S VAST AND FERTILE LANDS–OUR SOURCE OF INSPIRATION AND FRESH AND REGIONAL INGREDIENTS

- MADE WITH FRESH REGIONAL INGREDIENTS DELIVERED DAILY

- BIOLOGICALLY APPROPRIATE DOG FOOD

- FRESH, RAW, OR DEHYDRATED ANIMAL INGREDIENTS

- NO RENDERED POULTRY, FISH OR MEAT MEALS

- WHOLEPREY DIET

- ORIJEN mirrors the richness, freshness and variety of WholePrey meats that dogs are allowed to eat.

- FREE-RUN CHICKEN AND TURKEY, WILD-CAUGHT FISH AND NEST-LAID EGGS

- MADE IN OUR USA KENTUCKY KITCHENS

- INGREDIENTS WE LOVE FROM PEOPLE WE KNOW AND TRUST

- TRUSTED BY PETLOVERS EVERYWHERE, ORIJEN IS THE FULLEST EXPRESSION OF OUR BIOLOGICALLY APPROPRIATE AND FRESH REGIONAL INGREDIENTS COMMITMENT

- FRESH FROM OUR REGION, and

- AWARD-WINNING BIOLOGICALLY APPROPRIATE DOG FOOD.

15.    Champion's representations are further reinforced with imagery. For example, the label for a 13 lb. bag of ORIJEN Original contained the following depictions, among others:









16.     The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

**Champion's Representations Were False and Deceptive**

17.     Champion falsely represents that its Products are biologically appropriate and made from regionally sourced, high-quality ingredients that are fit for human consumption prior to inclusion in its Products. To the contrary, Champion's Products were made primarily from animal byproducts obtained from pet food processors throughout the world—they contained virtually no animal muscle meat— and are made from ingredients of a quality much inferior to that represented by Champion.

18.     Champion's representations that its Products include "fresh" ingredients are false because Champion: (a) knowingly uses expired ingredients in the Products; (b) obtains meal ingredients and fats from unsanitary pet food rendering facilities around the world; (c) uses a variety of ingredients that are frozen; and (d) routinely utilizes "regrinds" (i.e., items that were not fit to be sold after their original preparation) in the Products, even if the Product is a different diet from the "regrind."

19.     Champion's representations that its Products include only "regional" ingredients are false because Champion: (a) imports most of its ingredients from outside the Commonwealth of Kentucky; (b) a substantial portion of those ingredients are imported from outside the United States and from as far away as New Zealand, Morocco, Denmark, and Peru; and (c) the few ingredients Champion sources from Kentucky are first shipped over 1,000 miles away to New Bedford, Massachusetts for further processing before being shipped to Champion's Kentucky facility.

20.     Champion's representations in the labels on its Products that it obtains its supplies from "PEOPLE WE TRUST" are false because Champion's ingredients are: (a) obtained through a complex, convoluted supply chain where Champion may be unaware of the origin of the ingredient; and (b) a typical Champion ingredient supply chain includes: a pet food ingredient broker, who contracts with a "secondary processor" (usually a pet food rendering facility), who obtains inedible animal byproducts from one or more "primary processors" (slaughterhouses where valuable human-edible muscle meat is removed), and who obtains animals from one or more farms.

21.     Champion's websites repeat the false and misleading representations about the benefits, quality, purity and natural make-up of its pet foods.

22.     Champion's representation that its ingredients are fit for human consumption prior to inclusion of the Products is false because the vast majority of animal ingredients Champion uses arrive with bills of lading clearly designating the material to be inedible and unfit for human consumption, as depicted below.

23.     Meal ingredients contained in the Products are heavily processed. Most of the pet food rendering facilities that supply Champion's ingredients also process dead and condemned meats (meaning animals that died by means other than slaughter and diseased or spoiled meats).

24.     Champion's ingredients are also contaminated with excessive quantities of hair (for one ingredient, Champion's own specification allows for 30 grams per pound to consist of hair), insects, plastic ear tags from livestock, feathers, and bones – none of which is consistent with Champion's human grade ingredient claims.

25.     Champion's ingredients in large part exclude nutritious muscle meats and are neither "wholeprey" nor "biologically appropriate" as represented to consumers. Instead, they are largely composed of inedible animal byproducts that, at best, contain minimal inclusions of valuable and nutritious muscle meats but otherwise include cartilage, bone, filtering organs, and other animal parts where high concentrations of toxic heavy metals accumulate.

26.     The high levels of heavy metals in the Products further evidence that the Products were not made from ingredients similar to the quality of ingredients humans consume. According to a white paper[1] published by Champion, the Products contain the following average concentrations of heavy metals:

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---|---|---|---|---|
| Average Concentration | 890 | 230 | 90 | 20 |

[1] *Orijen And Acana Foods In Comparison To Pet Food Safety Standards*, CHAMPION PETFOODS, http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf (last visited Feb. 26, 2019).

11

27.     For example, of the 11 pounds of "fresh, raw, or dehydrated animal ingredients" in a 13-pound bag of Orijen Original, the package claims to contain 8.5 pounds of chicken, turkey, and eggs—over 77% of the "fresh, raw, or dehydrated animal ingredients."

28.     Chicken, turkey, and eggs consumed by humans contain no or only negligible amounts of arsenic, lead, cadmium, and mercury:[2]

|         | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---------|-----------------|--------------|-----------------|-----------------|
| Chicken | 3               | 0            | .3              | 0               |
| Turkey  | 6               | 0            | .1              | .1              |
| Eggs    | 0               | .4           | 0               | .1              |

29.     If the Products were made from human-grade ingredients prior to inclusion in the Products, as Defendants represented, the levels of heavy metals in the Products would be similar to that found in foods consumed by humans. The fact that the Products contains exponentially higher levels of heavy metals than that found in human foods is strong evidence that Defendants' representations are false and deceptive.

30.     Ingredients found in Champion's Products are not of the quality represented to consumers by Champion. Because purchasers consistently make their dog food purchasing decisions based on food quality and price, they would not have paid the premium charged by Champion had they known about the omissions and/or misleading representations on the packaging and on Champion's website.

---

[2] This table was prepared using data from the FDA's Total Diet Study, which was revised in April 2017. *See* U.S. Food & Drug Admin*., Total Diet Study*, https://www.fda.gov/downloads/Food/FoodScienceResearch/TotalDietStudy/UCM184301.pdf (last visited Feb. 11, 2019). Data for chicken, turkey, and eggs comes from mean concentrations for TDS Food No. 240, 26, and 37, respectively.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf

of the following proposed class:

> All persons and entities who purchased a Champion dry dog food
> product for end use and not for resale within the Commonwealth of
> Pennsylvania (the "Class").

Excluded from the Class are Defendants, including any entity in which Defendants have a controlling

interest, is a subsidiary of Defendants, or which is controlled by Defendants, as well as the officers,

directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

32.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because

Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions involving the same claims.

### Numerosity—Federal Rule of Civil Procedure 23(a)(1)

33.     The members of the Class are so numerous that joinder of all members is

impracticable. On information and belief, Class members number in the thousands.

### Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)

34.     This action involves the following common questions of law or fact which

predominate over any potential questions affecting only individual Class members:

(a)     Whether Champion engaged in the wrongful conduct as alleged herein;

(b)     Whether Champion misrepresented the Products to Plaintiffs and the other
Class members;

(c)     Whether Champion owed a duty to Plaintiffs and the Class members;

(d)     Whether Champion breached the express warranties it made to Plaintiffs and
the other Class members;

(e)     Whether Champion breached implied warranties;

13

(f)     Whether Plaintiffs and the other Class members are entitled to actual damages; and

(g)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution, declaratory, and injunctive relief.

35.     Champion engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical misrepresentations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate in this action.

### Typicality—Federal Rule of Civil Procedure 23(a)(3)

36.     Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and all other Class members were damaged because of the uniform misconduct described above. Additionally, identical claims and legal theories are asserted on behalf of Plaintiffs and the other Class members.

### Adequacy—Federal Rule of Civil Procedure 23(a)(4)

37.     Plaintiffs' interests are aligned with and do not conflict with the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### Superiority—Federal Rule of Civil Procedure 23(b)(3)

38.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, and other financial detriment suffered individually by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against

Champion, making it impracticable for Class members to individually seek redress for Champion's

wrongful conduct. Even if Class members could afford individual litigation, the court system should

not be forced to shoulder such inefficiency. Individualized litigation would create a potential for

inconsistent or contradictory judgments and increase the delay and expense to all parties and the court

system. By contrast, the class action device presents far fewer management difficulties and provides

the benefits of single adjudication, economies of scale, and comprehensive supervision by a single

court.

## CLAIMS

### Count I
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et seq.* (the "UTPCPL")

39.     Plaintiffs adopt and reallege paragraphs 1 through 38 of this Class Action Complaint.

40.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat.

Ann. §§ 201-1 *et seq.* (the "UTPCPL") makes unlawful "[u]nfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce. . . ." The Act specifically

defines what constitutes unfair methods of competition and unfair or deceptive acts or practices.

Accordingly, Plaintiffs specifically believe that Defendants have:

> (v) Represent[ed] that [their] goods . . . have . . .characteristics,
> ingredients, [or] benefits . . . that they do not have. . . . ;
>
> . . .
>
> (vii) Represent[ed] that [its] goods . . . are of a particular standard,
> quality or grade . . . , if they are of another;
>
> . . .
>
> (xxi) Engage[ed] in any other fraudulent or deceptive conduct which
> create[d] a likelihood of confusion or of misunderstanding.

15

73 Pa. Stat. Ann. § 201-2 (4) (v)-(xxi).

41.    Defendants and Plaintiffs each qualify as a "Person" as defined in the statute. *See id.* § 201-2 (2).

42.    Because Plaintiffs purchased the Champion dog food primarily for family or household purposes and because each suffered an ascertainable loss of money based on Champion's misrepresentations and/or omissions, Plaintiffs may bring a private cause of action to recover damages. *See id.* § 201-9.2 (a).

43.    Defendants' omissions and misrepresentations included lying about the quality of their products, including where they source their ingredients, the real level of nutrients and freshness of their Products, that the ingredients were fit for human consumption, biologically appropriate, and part of a wholeprey diet. Defendants additionally engaged in deceptive conduct which created the likelihood that Plaintiffs would misunderstand the nature of the Products when Defendants represented that their Products were fit for human consumption prior to inclusion in their food when Defendants knew most consumers would reasonably interpret this phrase as fit for human consumption. Defendants products were nothing like they were warranted and represented.

44.    Defendants knew or should have known that when the Products left their control, they were not in conformity or consistent with representations on the labels, on their websites and in the advertising and marketing materials.   Accordingly, Defendants' Products did not provide the represented and warranted benefits.

45.    Defendants' deception is material because it influenced purchasing and payment decisions.

46.    Plaintiffs and Class members have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

16

47.     Defendants intended that Plaintiffs and other Class members rely on their omissions and misrepresentations, and this reliance was crucial to Defendants commanding a premium price for the Products.

48.     Defendants deceived and continue to deceive consumers about the quality and ingredients of the Products. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendants is continuing, with no indication that it will cease.

49.     Accordingly, Defendants' deceptive, false and misleading statements deceived Plaintiffs and Class members and a substantial segment of the target consumer audience and improperly influenced consumers' purchasing decisions, as Plaintiffs and Class members relied on such misrepresentations in violation of the UTPCPL.

50.     Additionally, the conduct described above and throughout this Complaint took place in substantial part within the Commonwealth of Pennsylvania.

51.     Plaintiffs and Class Members are entitled to recover compensatory damages, interest, attorneys' fees, costs, and whatever other relief the Court deems appropriate (including injunctive relief).

**Count II**
**Breach of Express Warranty**

52.     Plaintiffs adopt and reallege paragraphs 1 through 51 of this Class Action Complaint.

53.     Defendants marketed and sold the Products into the stream of commerce with the intent that Plaintiffs would see the Products' misrepresentations, rely on them, and purchase the Products.

17

54.    Defendants' affirmations of fact on the labels and marketing materials on their packaging and websites created express warranties including, *inter alia*:

(a)    natural, fit for human consumption, and made from "Biologically Appropriate", and Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish and vegetables;

(b)    nutritious, superior quality, pure, natural, healthy and safe for consumption;

(c)    "provide a natural source of virtually every nutrient your dog needs to thrive;" and

(d)    "guaranteed to keep your dog healthy, happy and strong."

55.    Defendants made these express warranties regarding the Products' quality, ingredients, and fitness for consumption on their website, in marketing statements, and on the Products' packaging in connection with the sale of the Products.

56.    In making their decision to purchase the Products, Plaintiffs and members of the Class reasonably relied on Defendants' marketing materials, packaging and website.

57.    Defendants' warranties became part of the basis of the bargain between Plaintiffs and members of the Class when Plaintiffs relied on these representations and purchased Defendants' Products.

58.    As a result, Defendants breached express warranties provided to Plaintiffs and the members of the Class regarding the Products because the Products never conformed to what Defendants specifically advertised, represented and warranted. Because Defendants breached these express warranties, Plaintiffs and members of the Class were damaged in the amount of the purchase price they paid for the Products in an aggregate amount to be proven at trial.

59.     Defendants have been given ample notice of the defects associated with its Products and have chosen not to cure them.   Instead, Defendants still warrant through its marketing materials, packaging, and websites that the Products are, *inter alia,* natural, safe, fit for consumption, and guaranteed to keep dogs healthy, happy, and strong.

60.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the members of the Class have suffered actual damages because Plaintiffs purchased much lower quality products compared to Defendants' representations of them. As discussed herein, Defendants' Products are worth far less than the price Plaintiffs paid.   In addition, Plaintiffs would not have purchased the Products at all if, at the time of purchase, they had known of Defendants' Products' real quality and ingredients.

61.     Plaintiffs, on behalf of themselves and the Class members, demand judgment against Defendants for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, costs, and any appropriate injunctive relief the Court deems proper.

**Count III**
**Breach of the Implied Warranty of Merchantability**

62.     Plaintiffs adopt and reallege paragraphs 1 through 61 of this Class Action Complaint.

63.     The Products are goods and Defendants, as the manufacturers, marketers, distributors, and sellers of the Products, are merchants within the meaning of the Uniform Commercial Code, as adopted in Pennsylvania.

64.     Defendants developed, manufactured, distributed, marketed, advertised, and sold the Products directly to or for their eventual sale to end users for consumption by canines.

65.     Defendants impliedly warranted to Plaintiffs and members of the Class, prior to their purchase of the Products, that the Products were merchantable and reasonably fit for the purposes for

which such products are used and that the Products were acceptable in trade for the product description.

66.     Plaintiffs and members of the Class relied on Defendants' skill and judgment in selecting Defendants' Products to purchase. Moreover, Plaintiffs and members of the Class relied on statements made on Defendants' packaging, product labels, on its website and in its marketing literature that the Products were, *inter alia,* natural, safe and were fit for the ordinary purposes for which such Products are consumed by canines.

67.     Plaintiffs and the other Class members purchased the Products that were manufactured and sold by Defendants in consumer transactions. The implied warranty of merchantability attached to the sale of these Products.

68.     To be merchantable, the products must:
. . .

(2) in the case of fungible goods, are of fair average quality within the description;
. . .

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

13. Pa.C.S. § 2314 (b)(2)-(6).

69.     Defendants' Products do not meet the quality of their description because they do not contain fresh, regionally sourced, biologically appropriate ingredients and were not made from ingredients fit for human consumption prior to inclusion in Defendants' foods.

70.     Defendants' Products are not adequately contained, packaged and labeled because they are packaged as containing healthy, high-quality, and regionally-sourced ingredients, but instead

contain much lower quality ingredients that are not sourced regionally, and were never fit for human consumption.

71.     Defendants' Products also do not conform to the promises and affirmations of fact made on their containers, packaging and labels, website, and marketing literature because they do not consist of healthy, high-quality ingredients that would ever be fit for human consumption or canines as their packaging and labeling warrants.

72.     Accordingly, Defendants breached their duty by selling to Plaintiffs and other Class members Products that were not of merchantable quality.  Therefore, Plaintiffs and the other members of the Class did not receive the Products as warranted. The products purchased by Plaintiffs and other Class members were worth substantially less than the products Defendants promised and represented. Plaintiffs as well as members of the Class relied on Defendant's implied warranties concerning their Products and each Plaintiff sustained an ascertainable loss (financial injury) from Defendants' breach of the implied warranty of merchantability.

73.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the members of the Class have suffered actual damages in that they have purchased Products of inferior quality and ingredients compared to how they were represented. Defendants' Products are worth far less than the price Plaintiffs and other Class members paid, and Plaintiffs and other Class members would not have purchased the Products at all if they had known of the true quality and ingredients of Defendants' Products.

74.     Plaintiffs, on behalf of themselves and the Class members, demand judgment against Defendants for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, costs, and any appropriate injunctive relief.

**Count IV**
**Fraudulent Omission**

75.      Plaintiffs adopt and reallege paragraphs 1 through 74 of this Class Action Complaint.

76.      Defendants represented on the packaging of Orijen Original dry dog food that it is "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs—sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

77.      The packaging further represents that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

78.      The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

79.      Defendants had a duty to disclose to Plaintiffs and other Class members the true quality, characteristics, ingredients and suitability of its Products because (a) Defendants were in a superior position intellectually regarding the true state of its Products; and (b) Plaintiffs and other Class members could not reasonably have been expected to learn or discover that the Products and their ingredients quality were misrepresented prior to purchasing.

80.      Contrary to these representations, Defendants knew and failed to disclose that the Products are, *inter alia,* not composed of high-quality ingredients that were never fit for human

22

consumption, biologically appropriate, fresh, or sourced with local ingredients. Rather, Defendants' Products are much lower quality than described.

81.      The foregoing material facts were intentionally withheld from Plaintiffs and other members of the Class who purchased the Products so that Plaintiffs would rely on and purchase these Products at a premium price.

82.      Plaintiffs and other members of the Class relied on Defendants' misrepresentations and omissions and suffered damages because of their reliance on Defendants' misrepresentations and omissions and purchase of the Products.

83.      Plaintiffs, on behalf of themselves and the Class members, demand judgment against Defendants for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, costs and any appropriate injunctive relief.

**Count V**
**Unjust Enrichment**

84.      Plaintiffs adopt and reallege paragraphs 1 through 83 of this Class Action Complaint.

85.      Plaintiffs and other members of the Class conferred a tangible economic benefit upon Defendants by purchasing Defendants' misrepresented Products.

86.      Plaintiffs and other members of the Class purchased Defendants' products to Defendants' benefit and to their detriment because they paid a premium price expecting the goods to conform to the representations on Defendants' labels, on its website and in its marketing, including, *inter alia,* that the Products contained high quality, healthy ingredients that were fit for human consumption prior to inclusion in Defendants' Products.

87.      At the time of Plaintiffs' and Class Members' purchases, Defendants knew of the low-quality ingredients used and the lack of regionally-sourced ingredients. Knowing full well that their

representations were false, Defendants sold the Products to Plaintiffs and Class Members at a premium price. Accordingly, Defendants continue to retain a benefit improperly obtained to the detriment of Plaintiffs and Class members.

88.     Accordingly, it would be unjust and inequitable for this Court to allow Defendants to retain these benefits. Accordingly, Plaintiffs request restitution or disgorgement of monies paid to Defendants for these misrepresentations, or any such other appropriate equitable and/or injunctive remedy to Plaintiffs and Class members that the Court deems appropriate.

## Count VI
## Negligent Misrepresentation

89.     Plaintiffs adopt and reallege paragraphs 1 through 88 of this Class Action Complaint.

90.     Independent of any contractual relationship between the parties, Defendants had a duty to fairly and accurately disclose and represent their Products on their labels, website, and advertising and marketing literature. However, likely aware of how consumers make purchasing decisions in its industry, Defendants used these misrepresentations regarding its Products' quality to command a premium price from consumers.

91.     During the Class Period, Defendants specifically negligently represented, omitted, and concealed from consumers material facts relating to the quality and ingredients of the Products, including, *inter alia*, that the Products were not high-quality, did not contain regional ingredients, and the ingredients were never fit for human consumption.

92.     Defendants made such false and misleading statements and omissions on their website, on the Products' packaging and labeling, and in Product literature and advertisements, with the intention of inducing Plaintiffs and Class members to purchase the Products.

24

93.     Defendants were careless in putting such statements on their labels, website, and in product literature without specifically ascertaining the truth of the representations. For example, Defendants should not claim on their label that the ingredients used in their Products are fresh when they use regrinds or that the ingredients are sourced locally when they come from around the globe.

94.     Plaintiffs and the Class members were unaware of the falsity of Defendants' misrepresentations and omissions and justifiably relied on them in deciding to purchase the Products. Had Plaintiffs and Class members been made aware that Products did not conform to the representations made on the labels, on the website and in the product literature and did not provide the promised health benefits for their dogs, they would not have purchased the Products at a premium price, but, instead, would have paid substantially less, or purchased different Products that they deemed to be a better value.

95.     As a direct and proximate result of these misrepresentations and omissions of material facts by Defendants, Plaintiffs and Class members have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial. Plaintiffs also request that this Court provide any available injunctive relief it finds appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter an Order:

A.      Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B.      Appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

C.      Finding that Defendants engaged in the unlawful conduct alleged herein;

25

D.  Awarding Plaintiffs and the other Class members actual, compensatory, and consequential damages;

E.  Awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

F.  Awarding Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses as provided by the UTPCPL; and

G.  Granting such other relief as the Court deems just and appropriate.

### JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.


Date:  February 26, 2019

Respectfully submitted,

 /s/ Charles E. Schaffer
Charles E. Schaffer
David. C. Magagna Jr.
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215)-592-1500
Facsimile:  (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES, P.C.**
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219-1918
Telephone: (412)-281-7229
Facsimile:  (412) 281-4229
arihn@piercelaw.com

*Attorneys for Plaintiffs*

26