# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

## CASE NO.: 2:18-cv-00744-CB

ANTHONY CESARE, ELIZABETH
DONATUCCI and TAYLOR KENNEDY,
individually, and on behalf of all others
similarly situated,

      Plaintiff,

v.

CHAMPION PETFOODS USA INC. and
CHAMPION PETFOODS LP,

      Defendants.

---

## DEFENDANTS CHAMPION PETFOODS USA INC.'S AND CHAMPION PETFOODS LP'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF FACTUAL ALLEGATIONS .................................................. 3

    A.    Allegations Relating to the Heavy Metals Theory .................................. 3

    B.    Allegations Relating to the Ingredients Theory ...................................... 5

III.    STANDARD OF REVIEW .............................................................................. 6

IV.    ARGUMENT ................................................................................................... 6

    A.    Plaintiffs Fail to State a Claim Pursuant to *Iqbal* and *Twombly*. ........... 7

        1.    Plaintiffs cannot state a claim based on the alleged presence of
             heavy metals in Champion's dog food ......................................... 7

        2.    Plaintiffs cannot state a claim based on the ingredients in the
             Champion dog food they purchased. ........................................... 9

    B.    Independently, Specific Pleading Deficiencies Require the Dismissal of
        Each of the Claims. ............................................................................... 13

        1.    Counts I, IV, and VI Must Be Dismissed. ................................. 13

             a.    The economic loss doctrine bars the UTPCPL, fraudulent
                 omission, and negligent misrepresentation claims in
                 Counts I, IV, and VI ......................................................... 13

             b.    Plaintiffs fail to plead Counts I, IV, and VI with the
                 requisite particularity. ..................................................... 14

             c.    Plaintiffs fail to allege that they justifiably relied on any of
                 Champion's statements or omissions in order to state a
                 UTPCPL claim, a negligent misrepresentation claim, or a
                 fraudulent omission claim ................................................. 15

             d.    Plaintiffs fail to allege facts which establish that Champion
                 had a duty to disclose. ...................................................... 16

        2.    Plaintiffs Fail to Plead a Claim for Breach of Express Warranty. ............ 17

        3.    Plaintiffs Fail to Plead a Claim for Breach of Implied Warranty. ............ 20

        4.    Plaintiffs Fail to Plead a Claim for Unjust Enrichment. ............................ 21

V.    CONCLUSION .............................................................................................. 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arndt v. Johnson & Johnson*,
  67 F. Supp. 3d 673 (E.D. Pa. 2014) ................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................6, 21

*Bailey v. Nationwide Ins. Co. of Am.*,
  No. 10-520, 2010 WL 3167544 (W.D. Pa. Aug. 10, 2010) ..................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................................6

*Bortz v. Noon*,
  729 A.2d 555 (Pa. 1999) ................................................................................................17

*Catania v. Zurich Am. Ins. Co.*,
  No. 13-1278, 2014 WL 12599599 (W.D. Pa. June 16, 2014) .................................................6

*Dolan v. PHL Variable Ins. Co.*,
  No. 3:15-CV-01987, 2017 WL 4812308 (M.D. Pa. Oct. 25, 2017) ................................14, 15

*Hair Club for Men, LLC v. Lailuma Ehson & Illusion Day Spa, LLC*,
  No. 1:16-cv-236, 2016 WL 4577019 (E.D. Va. Aug. 31, 2016) ...........................................22

*iRecycleNow.com v. Starr Indem. & Liab. Co.*,
  674 F. App'x 161 (3d Cir. 2017) ......................................................................................21

*Kimmel v. Phelan Hallinan & Schmieg, PC*,
  847 F. Supp. 2d 753 (E.D. Pa. 2012) ................................................................................15

*Loeb v. Champion Petfoods USA, Inc.*,
  Case No. 18-CV-494-JPS, 2019 WL 464140 (E.D. Wis. Feb. 6, 2019)....................1, 7, 8, 12

*Lombardi v. Allstate Ins. Co.*,
  No. 08-949, 2009 WL 1811540 (W.D. Pa. June 23, 2009) ...................................................16

*Mazur v. Milo's Kitchen, LLC*,
  No. 12-1011, 2013 WL 3245203 (W.D. Pa. June 25, 2013) .................................................14

*Osness v. Lasko Prod., Inc.*,
  868 F. Supp. 2d 402 (E.D. Pa. 2012) ................................................................................20

*Protica, Inc. v. iSatori Tech., LLC*,
  No. 2011-cv-01105, 2012 WL 1071223 (E.D. Pa. Mar. 30, 2012) ........................................17

*ScanSource, Inc. v. Datavision-Prologix, Inc.*,
  No. CIV.A. 04-CV-4271, 2005 WL 974933 (E.D. Pa. Apr. 26, 2005) ...................................13

*Schmidt v. Ford Motor Co.*,
   972 F. Supp. 2d 712 (E.D. Pa. 2013) .................................................................15

*In re Shop-Vac Mktg. and Sales Practice Litig.*,
   964 F. Supp. 2d 355 (M.D. Pa. 2013) ................................................................19

*Starks v. Coloplast Corp.*,
   No. 13-3872, 2014 WL 617130 (E.D. Pa. Feb. 18, 2014) ..................................18

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
   40 F. Supp. 2d 644 (W.D. Pa. 1999) .................................................................3, 4

*Webb v. Volvo Cars of N.A., LLC*,
   No. 13-2394, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018) ...............14, 15, 18, 21

*Weinberg v. Sun Co.*,
   777 A.2d 442 (Pa. 2001) ....................................................................................15

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ..............................................................................13

*Whitaker v. Herr Foods, Inc.*,
   198 F. Supp. 3d 476 (E.D. Penn. 2016) .......................................................13, 14

*Yocca v. Pittsburgh Steelers Sports*,
   854 A.2d 425 (Pa. 2004) ....................................................................................15

*Yurcic v. Purdue Pharma, L.P.*,
   343 F. Supp. 2d 386 (M.D. Pa. 2004) ...............................................................20

**Statutes**

13 Pa. C.S.A. § 2313(a)(1) ...........................................................................................18

13 Pa. C.S.A. § 2313(b) ................................................................................................19

13 Pa. C.S.A. § 2314(b) ................................................................................................20

73 Pa. C.S.A. § 201-1 .....................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................14, 15

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2, 6

*https://acana.com/usa/about-acana/fresh-regional-ingredients/* (last visited
   March 19, 2019) .................................................................................................10

*https://talkspetfood. aafco.org/byproducts* (last visited February 25, 2019) ...................9

*https://www.fda.gov/Food/FoodScienceResearch/TotalDietStudy/default.htm* (last
   visited June 3, 2018) .............................................................................................4

## I.       INTRODUCTION

Plaintiffs Anthony Cesare ("Cesare"), Elizabeth Donatucci ("Donatucci"), and Taylor Kennedy ("Kennedy") (collectively, "Plaintiffs") initially alleged in their Complaint that Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively, "Champion") misled consumers by failing to disclose that its ORIJEN and ACANA dog food purportedly contained what Plaintiffs claim were "dangerous" and "excessively high levels of toxic heavy metals." Complaint [Dkt. 1] ("Compl.") at ¶¶ 2, 6, 7, 15, 17, 40, 41, 60, 61, 71, 82, 88, 93, 94, 97, 101. However, eight months after Plaintiffs filed the initial Complaint, Plaintiffs requested, and in turn was granted, leave to amend their Complaint. [Dkt. 29, 30][1]

The few allegations in the Amended Class Action Complaint ("FAC") directed to purportedly "exponentially high[] levels" of heavy metals (which occur naturally in ingredients used to make Champion's protein-rich diets) remain nothing but speculation and conjecture. *See* FAC at ¶¶ 2, 29. Indeed, the FAC *still* fails to allege what is a permissible level of heavy metals in dog food, and without such a baseline, reference point, guideline or standard, Plaintiffs cannot plausibly plead that Champion's dog food contains "exponentially high[] levels" or amounts of metals.

Plaintiffs' latest tactic is to pivot in the FAC from heavy metals toward a new theory directed broadly to the ingredients in the dog food products. However, just as with their heavy metals theory, Plaintiffs' allegations fail on their face to plead a plausible, legally-cognizable claim. As explained more fully below, Plaintiffs fail in the first instance to plead any facts

---

[1] Plaintiffs' motion for leave to amend was prompted by a court's ruling in a similar case that "Plaintiff has failed to create a genuine dispute as to whether the heavy metal concentrations […] are excessive or dangerous." *Loeb v. Champion Petfoods USA, Inc.*, Case No. 18-CV-494-JPS, 2019 WL 464140, at *7 (E.D. Wis. Feb. 6, 2019). Notably, Plaintiffs no longer claim that the levels of heavy metals are "dangerous."

necessary to tie their generic allegations about ingredients to the dog food they purchased. And, the statements on the packaging of the dog food they did purchase are not otherwise deceptive or misleading. Therefore, because Plaintiffs cannot plausibly connect the dots, *i.e.*, allege any facts that the dog food they purchased included the ingredients that they claim were improperly used or included, their new ingredients theory (which is wholly unrelated to the heavy metal allegations in the prior Complaint) also fails to state a claim.

Beyond those fatal pleading flaws, the FAC should be dismissed as a matter of law on the basis of specific pleading deficiencies with respect to the causes of action alleged in the FAC:

- Counts I, IV, and VI, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa. Cons. Stat. Ann. § 201-1 *et seq.* (the "UTPCPL"), fraudulent omission, and negligent representation, respectively, fail because the claims are barred by the economic loss doctrine, are not pled in accordance with Rule 9(b), and Plaintiffs have not pled that they justifiably relied on any of Champion's statements or omissions;

- Count IV, fraudulent omission, also fails because Plaintiffs have not pled facts demonstrating that Champion had a duty to disclose;

- Count II, breach of express warranty, fails to allege facts which establish a warranty exists between Champion and the Plaintiffs, let alone that Champion breached any express warranty;

- Count III, breach of implied warranty, fails because Plaintiffs have not pled facts adequate to aver that the dog food they received and fed to their dogs for an extended time was not merchantable; and

- Count V, unjust enrichment, fails because Plaintiffs received the benefit of the bargain.

Given that Plaintiffs have been afforded an opportunity to re-plead and good faith efforts have been made to confer with Plaintiffs' counsel to determine whether the pleading deficiencies identified in Champion's Motion to Dismiss Amended Class Action Complaint may be cured by amendment, the FAC should be dismissed with prejudice pursuant to Rule 12(b)(6).

## II.     SUMMARY OF FACTUAL ALLEGATIONS

Champion sells a variety of dog foods throughout the United States.  FAC at ¶ 1.  Its dry dog food products are sold under the ORIJEN or ACANA brand names. *Id.* The packaging of Champion dog foods states that Champion's products are "Biologically Appropriate" and contain "fresh, regional ingredients." *Id.* ORIJEN's packaging also states that ORIJEN "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." *Id.*

Cesare alleges that he purchased ORIJEN and ACANA dry dog food products for his dogs from Chewy.com and Leone Pet Supply. *Id.* at ¶ 6. Donatucci and Kennedy allege that they purchased ACANA dry dog food products, for their dog Hyde from Chewy.com.  *Id*. at ¶ 7. Plaintiffs claim they purchased the products because they believed the products were healthy and included high quality, fresh, biologically appropriate and regionally-sourced ingredients. *Id*. at ¶¶ 6,7.

### A.     Allegations Relating to the Heavy Metals Theory

In May of 2017, Champion published a White Paper (cited in paragraph 26 and 26 n.1 of the FAC with an internet link and for ease of reference attached hereto as Exhibit "A")[2] analyzing ORIJEN and ACANA foods in comparison to the limits utilized by the Food and Drug

---

[2] "Normally, a district court deciding a motion to dismiss will not consider documents that are not a part of the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment ... Indeed, in the event of a factual discrepancy between the pleading and the attached exhibit, the exhibit controls." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 649 (W.D. Pa. 1999) (internal quotation marks and citations omitted). Plaintiffs cite the White Paper in their Complaint. FAC at ¶ 26, http://www.championpetfoods.com/wpcontent/themes/championpetfoods/res/research/Champion -Petfoods-White-Paper-Heavy Metals.pdf. Plaintiffs' references to the White Paper are central to their claim that the dog food contains heavy metals. Consequently, the White Paper does not constitute material outside the pleadings for the purposes of the Motion to Dismiss. *See Sunquest*, 40 F. Supp. at 649.

Administration ("FDA") in its Target Animal Safety Review Memorandum and the National Research Council ("NRC"). Ex. A at 2. Specifically, with respect to the amount of arsenic, cadmium, lead, and mercury in its ACANA and ORIJEN dog and cat foods, the White Paper sets forth the following chart, as it pertains to dog food:

| HEAVY METAL | ACANA & ORIJEN  DOG FOODS | | NRC/FDA |
| | AVERAGE (mg/kg) | STANDARD DEVIATION (mg/kg) | Maximum  Tolerable Limits  (mg/kg) |
| --- | --- | --- | --- |
| Arsenic | 0.89 | 1.05 | 12.50 |
| Cadmium | 0.09 | 0.09 | 10.00 |
| Lead | 0.23 | 0.15 | 10.00 |
| Mercury | 0.02 | 0.02 | 0.27 |

*Id.* Plaintiffs reproduce some data from this chart in the FAC, but omits the columns detailing maximum tolerable limits ("MTL") pursuant to the Food and Drug Administration ("FDA") and the National Research Council ("NRC"), and also converts the chart from milligrams per kilogram to micrograms per kilogram.[3] FAC at ¶ 26.

Plaintiffs also reference (and include an internet link to) the FDA Total Diet Study, which reports the ***average*** amount of arsenic, lead, cadmium, and mercury measured by the FDA in that particular study present in oven-roasted chicken breast with its skin removed, oven-roasted turkey breast, and boiled eggs ***consumed by humans***. *Id.* at ¶¶ 28, 28 n.2. However, the Total Diet Study reports only an average; it does not purport to set forth dietary limits on heavy metals for any species. *See* https://www.fda.gov/Food/FoodScienceResearch/TotalDietStudy/ default.htm (last visited June 3, 2018).

---

[3] The FAC presents the data in micrograms per kilogram, while the White Paper presents the data in milligrams per kilograms. One milligram per kilogram is equal to 1000 micrograms per kilogram.

**B.      Allegations Relating to the Ingredients Theory**

While not pled in the initial Complaint, Plaintiffs now inject a hodgepodge of new allegations in the FAC that do not have anything to do with the claims about heavy metals. In general, Plaintiffs allege that they and others were misled or deceived because Champion's dog food supposedly does not contain high quality ingredients that are "biologically appropriate" or "fit for human consumption prior to inclusion in [Champion's] Products." FAC at ¶ 17. For example, Plaintiffs allege – but only in conclusory, broad-brush strokes – that the dog food products may include byproducts obtained from pet food processors and some production runs have included digestive organs and certain non-food items. *See id.* at ¶¶ 17, 24. Plaintiffs similarly allege Champion's ingredients are not fresh because Champion, at times and depending on the particular diet,[4] uses expired ingredients, meal ingredients and fats from unsanitary pet food rendering facilities, frozen ingredients, and "regrinds." *Id.* at ¶ 18. Plaintiffs further contend Champion's ingredients are not regional because Champion imports many of its ingredients from outside of Kentucky and some ingredients that are from Kentucky are shipped to Massachusetts for processing before being returned to Kentucky. *Id.* at ¶ 19. Finally, Plaintiffs allege that Champion's representation that it obtains its ingredients from "people we trust" is false because some ingredients are obtained through a supply chain where there is a pet food ingredient broker. *Id.* at ¶ 20.

As further set out below, Plaintiffs fail to allege that any of the products they purchased included any of these allegedly improper ingredients.  Plaintiffs' claims also fail because they are expressly predicated on a fundamental misreading of the actual product packaging from the products they purchased.

---

[4] The term "diet," as referred to in this Memorandum, means a ORIJEN or ACANA dry dog food product with a unique formula, ingredient composition, and package.

## III.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain facts that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)*.* "[W]hen the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Under this standard, "a plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. That is, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Although the well-pled factual allegations are to be accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" must be disregarded. *Iqbal*, 556 U.S. at 678. In addition, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "[T]o survive a motion to dismiss, a complaint must do more than allege the plaintiff's entitlement to relief, and instead, must show such an entitlement with its facts." *Catania v. Zurich Am. Ins. Co.*, No. 13-1278, 2014 WL 12599599, at *2 (W.D. Pa. June 16, 2014) (Bissoon, J.) (internal quotation marks and citations omitted).

## IV.    ARGUMENT

As set forth more fully below, Plaintiffs have failed to state a cause of action against Champion. The claims should be dismissed in their entirety because Plaintiffs have not pled actual facts demonstrating that Champion made misrepresentations on its product's packaging, and further because the claims individually suffer from various pleading deficiencies. As a result, the FAC should be dismissed with prejudice.

A.     **Plaintiffs Fail to State a Claim Pursuant to *Iqbal* and *Twombly*.**

1.     **Plaintiffs cannot state a claim based on the alleged presence of heavy metals in Champion's dog food.**

The focus of Plaintiffs' initial Complaint, but now heavily downplayed in the FAC, was that Champion's pet food contained "dangerous" and "excessively high" levels of heavy metals which renders Champion's representations on its packaging misleading. *See* Compl. at ¶¶ 2, 6, 7, 15, 17, 40, 41, 60, 61, 71, 82, 88, 93, 94, 97, 101. Plaintiffs have removed their allegations as to any potential dangers of heavy metals. Instead, Plaintiffs now seemingly contend that statements on Champion's packaging are misleading due to the "exponentially high[] levels" of heavy metals compared to reported averages in human foods in the FDA's Total Diet Study, regardless of whether such levels are dangerous and still without identifying what levels are not excessive. *See* FAC at ¶¶ 2, 29. According to Plaintiffs, these statements include "biologically appropriate," "fresh," "regional," "people we trust," certain ingredients are "deemed fit for human consumption prior to inclusion in our foods," and "WholePrey." *See, e.g. id.* at ¶¶ 12, 14, 15. However, Plaintiffs plead no facts to support their claims that the statements on Champion's packaging were false or misleading, or otherwise give rise to any claim against Champion. Indeed, nowhere does Champion ever claim that either its raw materials (*i.e.*, ingredients) or finished products contain "no heavy metals," are "heavy metal free," or any similar statement or phrasing.

Moreover, the Court in *Loeb v. Champion Petfoods USA, Inc.* rejected this implausible theory. No. 18-CV-494-JPS, 2019 WL 464140, at *6 n. 7 (E.D. Wis. Feb. 6, 2019). Indeed, the *Loeb* Court held that a contention by plaintiff that Champion's packaging "is misleadingly advertised as healthy because of the mere presence of *any* heavy metals" is "absurd." *Id.*

This Court need not wait for summary judgment to conclude that, on the face of the FAC, Plaintiffs have failed to allege that the levels of heavy metals in the dog food products exceed a

known baseline, reference point, guideline or standard and would be quantified as excessive. Thus, just as in *Loeb,* Plaintiffs' allegations that Champion somehow misrepresented the quality of its food – due to the presence of heavy metals at safe levels – is absurd.

Importantly, the FAC still incorporates Champion's publicly available May 2017 White Paper, which discloses that the miniscule levels of naturally occurring heavy metals in Champion's dog food are far *below* the MTL for each substance as set forth by the FDA or the NRC. Plaintiffs cannot escape this reality.

Finally, Plaintiffs contend that because Champion's dog foods contain levels of heavy metals that are higher than the averages in the FDA's Total Diet Study for humans, various Champion statements are thereby rendered misleading or deceptive. FAC at ¶ 29. However, the study reports only the *averages* of heavy metals in certain foods for human consumption; it does not set any limits on the levels of heavy metals in human food. Nor does the study lend a shred of support to Plaintiffs' misguided and completely unsupported contention that the levels of heavy metals in Champion's dog food "are not suitable for consumption by humans."[5] *Loeb,* 2019 WL 464140, at *3 (stating the Total Diet Study "contains no conclusions of any kind"). And, Champion makes no representation that the levels of heavy metals are lower than the averages found in the FDA's Total Diet Study or otherwise, and for this reason as well, Plaintiffs' citation to the FDA's Total Diet Study does not help Plaintiffs state a claim.

---

[5] Additionally, Champion never represented that its finished dog food products were suitable for consumption by humans. Rather, Champion states that, for example, ORIJEN Original features "minimally processed poultry, fish and eggs that are deemed fit for human consumption **prior to inclusion** in our foods." SAC at ¶¶ 1, 13 (image) (emphasis added).

Accordingly, Plaintiffs' heavy metal theory fails to state a claim upon which relief can be granted because Plaintiffs have failed to plausibly allege that the levels of heavy metals in Champion's dog food renders any statement made by Champion misleading or deceptive.

> **2.    Plaintiffs cannot state a claim based on the ingredients in the Champion dog food they purchased.**

In light of the decision in *Loeb* and the inescapable absence of any baseline or standard to support their heavy metals theory, Plaintiffs try to pivot in the FAC to a brand-new theory relating to the ingredients allegedly contained in Champion's dog foods. Thus, besides rehashing the patently insufficient heavy metals allegations, Plaintiffs now assert that certain of Champion's statements on its product packaging are false because (according to Plaintiffs) some of Champion's dog food contains animal byproducts, expired ingredients, ingredients and fats from rendering facilities, frozen ingredients, regrinds, ingredients sourced outside of Kentucky, and ingredients obtained through a supply chain. *See* FAC at ¶¶ 17-20. However, Plaintiffs do not allege any facts to tie any of these allegations to the dog food they alleged they purchased. Consequently, these new, but equally flawed allegations, fail to state a plausible claim under *Iqbal* and *Twombly*. And, because the Court is directed under the *Iqbal/Twombly* standard to disregard these conclusory allegations, they are insufficient as a matter of law to plead the elements of the causes of action asserted in the FAC.

First, Plaintiffs contend that Champion misrepresented the quality of its dog food because the dog food contains "animal byproducts."[6] The allegation relating to this purported

---

[6] The Association of American Feed Control Officials ("AAFCO"), which is a collection of local, state, and federal agencies charged with regulating the sale and distribution of animal feed, defines "byproducts" as "secondary products produced in addition to the principal product." *See https://talkspetfood. aafco.org/byproducts* (last visited February 25, 2019). Additionally, AAFCO explicitly states that "this doesn't mean byproducts are unsafe or lack nutrition—they just aren't part of the original primary products." *Id.*

misrepresentation is plainly contradicted by the packaging that Plaintiffs rely on. Indeed, on the packaging, Champion specifically states that it utilizes a "WholePrey Diet," including "animal organs and cartilage," which are, by definition, animal byproducts. *See* Packaging of ORIJEN Original attached hereto as Exhibit "B."[7] Thus, the fact that Champion uses animal byproducts, which was plainly disclosed on the front of its packaging, cannot be deceptive. Moreover, to the extent Plaintiffs contend that the use of animal byproducts makes the dog food unfit for human consumption, Champion never represented, nor have Plaintiffs alleged, that Champion's finished dog food product or all of its ingredients were represented as fit for human consumption.[8] Rather, as shown in the FAC, the ORIJEN packaging states that it features "minimally processed poultry, fish and eggs that are deemed fit for human consumption **prior to inclusion in our food**s." FAC at ¶ 15 (emphasis added) (image). Thus, the fact that Champion uses animal byproducts and other ingredients that are deemed fit for human consumption prior to their inclusion in the dog food, which is disclosed on the ORIJEN packaging, does not and cannot render any of Champion's statements misleading.[9]

---

[7] Champion's packaging in its entirety is properly considered on a Motion to Dismiss because images of portions of the packaging are included in the FAC. FAC at ¶ 15. The packaging is for the ORIJEN Original diet and is the same as the packaging included in part in the FAC.

[8] Champion did state on ACANA's website that its "chicken, turkey, and whole eggs are classified fit for human consumption." *See https://acana.com/usa/about-acana/fresh-regional-ingredients/* (last visited March 19, 2019). However, Plaintiffs do not allege that he ever visited ACANA's website before purchasing the dog food, and therefore this representation would be irrelevant to his claims.

[9] Plaintiffs also allege that some packages of Champion's dog food may have contained hair, livestock ear tags, insects, and digestive organs. FAC at ¶ 24. Again, Plaintiffs fail to allege that any of the dog food she purchased contained any of these manufacturing anomalies. Therefore, these allegations are mere conjecture that are not connected to any of Plaintiffs' purchases and are otherwise irrelevant.

Second, Plaintiffs contend that Champion's statement that its dog food includes "fresh ingredients" is false because Champion allegedly uses expired ingredients, meal ingredients and fats from rendering facilities, ingredients that are frozen, and regrinds. *Id*. at ¶ 18. However, Plaintiffs do not allege that they purchased dog food that contained "expired" ingredients, meal ingredients, or fats from rendering facilities. To the contrary, the packaging reflected in the FAC (for ORIJEN Original) explicitly states that it contains "no rendered poultry, fish or meat meals." *Id.* at ¶ 15 (image).

With respect to allegations of deception regarding the alleged us of frozen ingredients, the front of the ORIJEN Original bag clearly states that the dog food contains "freeze-dried liver," and "raw" ingredients, which by definition, can include frozen ingredients.[10] *See* FAC ¶ 15 (image); Ex. B. Thus, the inclusion of frozen ingredients does not render Champion's representations false or misleading. And, as to the use of regrinds, nowhere on the packaging does it state that the dog food does not contain regrinds. *See* Ex. B. In short, Plaintiffs have failed to plead, based on the packaging and allegations in the FAC, a plausible claim that they purchased Champion dog food that was not "fresh" as advertised.

Third, Plaintiffs contend that Champion's representation that its dog food includes "regional ingredients" is false on the basis that Champion imports some ingredients from outside of Kentucky and ingredients that are sourced in Kentucky are sent to Massachusetts before being shipped back to Kentucky. FAC at ¶ 19. As an initial matter, even if some ingredients are imported, Champion does not represent that all of its ingredients are regional or from Kentucky. Further, Plaintiffs seemingly interpret the term "regional" in an extreme and unreasonably narrow

---

[10] The term "raw" is defined by AAFCO as "food in it is natural or crude state not having been subject to heat in the course of preparation as food." *See* AAFCO definition of "raw" attached hereto as Exhibit "C."

geographic sense, to only include the Commonwealth of Kentucky. *See id.* However, certain ingredients, such as fish ingredients, are sourced from the Atlantic Ocean, the closest ocean to Kentucky. Indeed, the mackerel and herring included in ORIJEN Original are identified as coming from the Atlantic Ocean. *See* Ex. B. While Plaintiffs generically allege that Champion imports some ingredients for some formulas or diets of dog food from foreign countries, Plaintiffs fail to identify what ingredients these are and whether they were included in the diets purchased by Plaintiffs. Finally, the mere fact that some ingredients sourced in Kentucky were transported to Massachusetts for processing before being returned to Kentucky does not somehow make the ingredient non-regional. Because Plaintiffs' allegations as to the regional representation are, as shown above, conclusory and illogical, these allegations do not and cannot state a viable claim.

Finally, Plaintiffs contend that Champion's representation that it obtains ingredients from "people we trust" is false because Champion obtains some ingredients through a supply chain. FAC at ¶ 20. Again, Plaintiffs' allegations are logically unsound. Champion is a pet food manufacturer, not a slaughterhouse. Thus, Champion could not purchase live animals from farmers to be directly included in its diets. And, that Champion may at times use a broker to obtain ingredients is not inconsistent with the statements on its packaging. The "people we trust" statement refers to brokers and farmers. The fact that there may be a broker in the supply chain, between Champion and the farmers in possession of the live animals used to make the ingredients in Champion's dog food does not render the statement that the ingredients are from "people we trust" false.

At bottom, Plaintiffs have not alleged facts that could prove, for the dog food that they purchased, that Champion made any false, misleading or deceptive statement on its packaging. The packaging clearly demonstrates that Plaintiffs' claims relating to purported misrepresentations

are not plausible. Indeed, Plaintiffs fail to allege any facts demonstrating that they purchased dog food that did not comply with the statements on the packaging. Thus, as to each of the causes of action asserted, Plaintiffs' illogical and conclusory allegations fail to state a claim.

**B.   Independently, Specific Pleading Deficiencies Require the Dismissal of Each of the Claims.**

**1.   Counts I, IV, and VI Must Be Dismissed.**

**a.   The economic loss doctrine bars the UTPCPL, fraudulent omission, and negligent misrepresentation claims in Counts I, IV, and VI.**

The economic loss doctrine bars Plaintiffs' claims for violation of the UTPCPL, fraudulent omission, and negligent misrepresentation. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 673–74 (3d Cir. 2002) (holding the economic loss doctrine applies to UTPCPL and fraudulent concealment claims); *ScanSource, Inc. v. Datavision-Prologix, Inc.*, No. CIV.A. 04-CV-4271, 2005 WL 974933, at *3 (E.D. Pa. Apr. 26, 2005) (holding the economic loss doctrine barred negligent misrepresentation claim). "Pennsylvania's economic loss doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp.3d 476, 487 (E.D. Penn. 2016) (internal quotations and citations omitted). It "originated in the products liability context and rests on the notion that the need for a remedy in tort is reduced when the only injury is to the product itself and the product has not met the customer's expectations, or, in other words, that the customer has received insufficient product value." *Id.* (internal citations and quotation marks omitted). And, the economic loss doctrine bars claims arising in tort where a consumer's injury is "based upon and flows from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased." *Id.* (internal citations and quotation marks omitted).

13

Here, Plaintiffs' claims are precisely those which are barred by the economic loss doctrine. In each of these counts, Plaintiffs are seeking compensatory damages relating to Champion's dog food not meeting their alleged expectations. FAC at ¶¶ 51, 83, 95. However, these types of damages in tort are barred by the economic loss rule. As a result, Counts I, IV, and VI should be dismissed. *See Whitaker*, 198 F. Supp.3d at 487–92 (dismissing UTPCL, negligent misrepresentation, and fraud claims pursuant to the economic loss doctrine).[11]

### b. Plaintiffs fail to plead Counts I, IV, and VI with the requisite particularity.

Plaintiffs' claims for violation of the UTPCPL, fraudulent omission, and negligent misrepresentation claims should be dismissed because Plaintiffs fail to allege these claims with any detail, much less at the level required to meet the heightened pleading standard to state those claims. *See Webb v. Volvo Cars of N.A., LLC,* No. 13-2394, 2018 WL 1470470, at *5 (E.D. Pa. Mar. 26, 2018) (holding Rule 9(b) "heightened pleading standard applies to [p]laintiff's fraudulent misrepresentation, negligent misrepresentation, and UTPCPL claims"); *Dolan v. PHL Variable Ins. Co.*, No. 3:15-CV-01987, 2017 WL 4812308, at *4 (M.D. Pa. Oct. 25, 2017) (Rule 9(b) "requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" (quoting Fed. R. Civ. P. 9(b)).

In these Counts, Plaintiffs do not plead any actual, particularized facts supporting their formulaic conclusions. Plaintiffs plead that they purchased the dog food believing the dog food was healthy and included high quality, fresh, biologically appropriate and regionally-sourced ingredients. FAC at ¶¶ 6, 7. However, they do not plead which specific statement on Champion's

---

[11] To the extent Plaintiffs rely on *Mazur v. Milo's Kitchen, LLC* in opposing this motion, that case is inapposite. No. 12-1011, 2013 WL 3245203 (W.D. Pa. June 25, 2013). In *Mazur*, the plaintiff alleged more than just economic damages and in fact, alleged that as a result of consuming the dog treats at issue, plaintiff's dog had to be euthanized. *Id.* at *9. Here, Plaintiffs have alleged nothing beyond economic damages barred by the economic loss rule.

packaging they saw prior to their purchase. And, even if they had, as set forth above, they do not

plead how any of the statements on Champion's packaging are misleading. Thus, Plaintiffs have

failed to satisfy the heightened pleading requirements of Rule 9(b), and as a result, Counts I, IV

and VI should be dismissed. *See Dolan*, 2017 WL 4812308, at *4 (dismissing UTPCPL claim

pursuant to Rule 9(b) where plaintiffs failed "to make clear exactly what misrepresentations or

fraudulent conduct related to each [d]efendant and impacted each [p]laintiff"); *Schmidt v. Ford

Motor Co.*, 972 F.Supp. 2d 712, 720 (E.D. Pa. 2013) (dismissing fraud, UTPCPL, and negligent

misrepresentation claims for failing to plead with heightened particularity where plaintiffs

formulaically pled "they justifiably and reasonably relied on [d]efendant's deceptive conduct,

nondisclosure, misrepresentation, or omission").

> **c.    Plaintiffs fail to allege that they justifiably relied on any of
> Champion's statements or omissions in order to state a
> UTPCPL claim, a negligent misrepresentation claim, or a
> fraudulent omission claim.**

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he

justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm

as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425, 438 (Pa. 2004).

Moreover, a UTPCPL claim "requires, in a private action, that a plaintiff suffer an ascertainable

loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa.

2001). "That means, in this case, [Plaintiffs] must allege reliance, that [they] purchased

[Champion's dog food] because [they] heard and believed [Champion's alleged] false advertising"

about its dog food. *Id.* Likewise, a claim for fraudulent omission or negligent misrepresentation

requires Plaintiffs to plead that they justifiably relied on a misrepresentation or omission. *See

Webb*, 2018 WL 1470470 at *7 (dismissing plaintiff's negligent misrepresentation claim for failing

to allege justifiable reliance on any purported misrepresentation); *Kimmel v. Phelan Hallinan &*

*Schmieg, PC*, 847 F. Supp. 2d 753, 770 (E.D. Pa. 2012) (noting justifiable reliance is an element of UTPCPL, fraud, and negligent misrepresentation claims).

Here, Plaintiffs generically describe the statements on Champion's packaging without stating what statements Plaintiffs relied on or even saw. Instead, Plaintiffs each plead in generic fashion that they purchased Champion's products because they "believed they were high quality, fresh, biologically appropriate and [contained] regionally sourced ingredients." FAC. at ¶ 6-7. However, Plaintiffs do not identify which of Champion's statements they justifiably relied on prior to purchasing Champion's dog food. As such, Plaintiffs have not adequately pled facts that demonstrate they relied on any of Champion's statements prior to their purchase of Champion's dog food and their UTPCPL claim must be dismissed. *See Bailey v. Nationwide Ins. Co. of Am.*, No. 10-520, 2010 WL 3167544, at *6 (W.D. Pa. Aug. 10, 2010) (dismissing UTPCPL claim because "[p]laintiffs did not assert factual allegations that they relied on false or misleading representations made by [d]efendant regarding the coverage of ATV vehicles under the [p]olicy, which induced them to purchase the [p]olicy, and as a result suffered an ascertainable loss"); *Lombardi v. Allstate Ins. Co.*, No. 08-949, 2009 WL 1811540, at *6 (W.D. Pa. June 23, 2009) (dismissing UTPCPL claim where "[p]laintiff fails to identify the misrepresentations which may have induced any such justifiable reliance, or to whom the alleged misrepresentations were made").

### d.    Plaintiffs fail to allege facts which establish that Champion had a duty to disclose.

Plaintiffs' claim for fraudulent omission fails because Plaintiffs have not pled facts which establish that Champion had a duty to disclose anything. Under Pennsylvania law, "[t]he tort of intentional non-disclosure has the same elements as intentional misrepresentation except in the case of intentional non-disclosure, the party intentionally conceals a material fact rather than

making an affirmative misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (internal quotations and citations omitted). However, "before failure to speak or disclose information can constitute actionable fraud, the party charged must have a duty to speak or disclose." *Protica, Inc. v. iSatori Tech., LLC*, No. 2011-cv-01105, 2012 WL 1071223, at *5 (E.D. Pa. Mar. 30, 2012). "[A] duty to disclose does not typically arise unless there is a confidential or fiduciary relationship between the parties." *Id.*; *see also Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 679 (E.D. Pa. 2014) ("To hold that a manufacturer has that type of special relationship with consumers would render the statute of limitations meaningless in a great number of products liability cases.").

Plaintiffs fail to plead any facts regarding their relationship with Champion, let alone facts that would support the existence of a "fiduciary" or "confidential" relationship. Moreover, Plaintiffs do not allege that Champion had a statutory or contractual duty to make any disclosures to them or that a partial disclosure on Champion's part gave rise to a duty to make a more complete disclosure. Plaintiffs merely allege that they purchased dog food manufactured by Champion from third-party pet supply stores in Pennsylvania and from the internet. *See* FAC at ¶¶ 6, 7 (alleging that Cesare purchased Champion dog food at Leone Pet Supply in Pennsylvania and from chewy.com and that Donatucci and Kennedy purchased Champion dog food from chewy.com). These allegations alone do not give rise to the type of relationship in which Champion owed a duty to disclose to Plaintiffs. *See Protica*, 2012 WL 1071223 at *5 (dismissing fraudulent concealment counterclaim where defendant did "not plead the source of Protica's alleged duty to disclose the fact that it voluntarily recalled two lots of New Whey brand protein drink").

### 2.   Plaintiffs Fail to Plead a Claim for Breach of Express Warranty.

Plaintiffs' breach of express warranty claim fails because they have not pled facts to establish the existence of an express warranty between themselves and Champion. Under Pennsylvania law, express warranties are created by a seller through, among other things, "[a]ny

affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." 13 Pa. C.S.A. § 2313(a)(1). "A promise becomes the basis of the bargain if [Plaintiffs] can prove that [they] read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." *Starks v. Coloplast Corp.*, No. 13-3872, 2014 WL 617130, at *6 (E.D. Pa. Feb. 18, 2014) (internal citation and quotation omitted).

In Count II, Plaintiffs allege in paragraph 55 that certain statements on Champion's "website, in marketing statements, and on the Products' packaging" constitute express warranties. FAC at ¶ 55. However, Plaintiffs do not plead that they saw any express warranty prior to their purchase of Champion's dog food. Rather, Plaintiffs merely allege in conclusory fashion that they purchased the products because they believed and relied on Champion's representations that the dog food was healthy and included ingredients that were high quality,[12] fresh, biologically appropriate, and regionally-sourced. *Id.* ¶¶ 6-7. However, Plaintiffs fail to state which of their laundry list of statements (*see* FAC at ¶ 14) on Champion's packaging each Plaintiff purportedly saw prior to their purchase of Champion's dog food. Without this allegation, the purported "warranties" cannot possibly become part of the basis of the bargain between Plaintiffs and Champion. Accordingly, Plaintiffs have failed to plead facts establishing a breach of express warranty claim. *See Webb*, 2018 WL 1470470 at *8 (dismissing breach of express warranty claim as "[t]here is no allegation whatsoever in Plaintiffs' SAC as to what express warranty was seen, heard and believed by [p]laintiff"); *Starks*, 2014 WL 617130 at *7 (dismissing breach of express warranty claim because plaintiff failed to plead "any details regarding the content of any express warranty, how it was made, that it became the basis of the bargain, or that it was directed to

---

[12] Plaintiffs do not and cannot allege that Champion advertises that their dog food is "high-quality." This statement does not appear on the packaging. *See* Ex. B.

[plaintiff]").

Moreover, statements on the packaging such as "fresh, regional ingredients," "nutritious," "superior quality," "pure," "healthy," "biologically appropriate," "provide a natural source of virtually every nutrient your dog needs to thrive" and "guaranteed to keep your dog healthy, happy, and strong" do not constitute warranties because they are simply "affirmation[s] merely of the value of the goods or [] statement[s] purporting to be merely the opinion of the seller or commendation of the goods" and thus do not create a warranty. 13 Pa. C.S.A. § 2313(b). Therefore, they cannot form the basis of a breach of express warranty claim.

Nor have Plaintiffs pled facts which demonstrate that any of the statements in paragraph 54 are untrue. As set forth *supra* at 8-12, Plaintiffs have not pled facts which demonstrate any of the statements in paragraph 54 were false or otherwise constitute a breach of warranty. By way of example, Plaintiffs do not plead facts demonstrating that the ingredients in the dog food that were marketed as fresh or regional, were not so. Importantly, Champion did not market that all of its ingredients in its dog food were fresh or regional. *See* Ex. B. Further, they do not plead facts which demonstrate that Champion even made several of the statements such as "natural," "nutritious," "superior quality," "pure," "natural," "healthy," and "safe for consumption." These statements, while alluded to in the breach of express warranty count (FAC at ¶ 54), cannot possibly serve as a basis for a breach of express warranty claim. *See* Ex. B. Regarding the "fit for human consumption" statement, Champion only marketed that certain, specific ingredients were "fit for human consumption prior to inclusion" in ORIJEN dog food. FAC at ¶ 15 (image)*.* Plaintiffs have not alleged that those specific ingredients marketed as fit for human consumption were in fact not fit for human consumption. Thus, for the foregoing reasons, Plaintiffs have failed to plead a breach of express warranty claim. *See In re Shop-Vac Mktg. and Sales Practice Litig.*, 964 F. Supp. 2d

355, 363 (M.D. Pa. 2013) (dismissing plaintiff's breach of express warranty claim where plaintiff

did not plead the content of the purported warranty); *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp.

2d 386, 398 (M.D. Pa. 2004) (dismissing breach of express warranty claims where plaintiff did not

allege "that he was aware of or relied upon any express warranties").

### 3.    Plaintiffs Fail to Plead a Claim for Breach of Implied Warranty.

Plaintiffs' claim for breach of an implied warranty must be dismissed because they fail to

allege that Champion's dog food is not merchantable or fit for its ordinary use. To be merchantable,

goods, such as Champion's dog food, must, among other things, be fit for their "ordinary purpose

for which such goods are used" and "conform to the promises or affirmations of fact." 13 Pa.

C.S.A. § 2314(b).   Plaintiffs allege in conclusory fashion that Champion's dog food is not

adequately contained, packaged and labeled, does not conform to the promises on its packaging,

does not pass without objection in the trade under the contract description, not of fair and average

quality, unfit for the ordinary purpose for which such goods are used, and [is] inadequately

contained, packaged, and labeled. FAC ¶¶ 70-71. But Plaintiffs fail to plead non-conclusory facts

supporting these assertions.   For example, Plaintiffs do not plead that their dogs suffered any ill

effects from the Champion dog food that Plaintiffs purchased. Moreover, Plaintiffs have not pled

facts demonstrating that the dog food they purchased failed to comply with any representation on

its packaging. *See supra* at 8-12. Accordingly, any claim for breach of the implied warranty of

merchantability should be dismissed.   *See* 13 Pa. Cons. Stat. § 2314(b)(1-6); *Osness v. Lasko*

*Prod., Inc.*, 868 F. Supp. 2d 402, 413 (E.D. Pa. 2012) (dismissing implied warranty claim because

plaintiff did "not allege that her fan has malfunctioned or otherwise failed to do what it was

supposed to do").

### 4.        Plaintiffs Fail to Plead a Claim for Unjust Enrichment.

To state a claim for unjust enrichment, Plaintiffs must plead three elements: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  *See Webb*, 2018 WL 1470470 at *10 (listing elements of claim under Pennsylvania law). In application, "[t]he most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162–63 (3d Cir. 2017). "Rather, the plaintiff must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for her to retain." *Id.* at 163 (affirming motion to dismiss unjust enrichment claim).

Plaintiffs' unjust enrichment claim fails because they do not plead facts which establish that it would be inequitable for Champion to retain the purported benefits conferred by Plaintiffs. In the FAC, Plaintiffs allege in conclusory fashion that Champion was unjustly enriched because they paid a premium price expecting that the dog food contained high quality, healthy ingredients that would be fit for human consumption.  FAC at ¶ 86.  Plaintiffs contend that "they paid a premium price expecting the goods to conform to the representations on [Champion's] labels." *Id.* However, Plaintiffs have not pled adequate facts to support these conclusions. *See Iqbal*, 556 U.S. at 678 (Courts are "not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiffs have not pled any facts which suggest that any of the statements on Champion's packaging were false or misleading. *See supra* 8-12. Consequently, Plaintiffs received exactly what was advertised.  *See Webb*, 2018 WL 1470470 at *11 (dismissing unjust enrichment claim because "[p]laintiffs have failed to demonstrate acceptance and retention of such benefits under

circumstances in which it would be inequitable for defendant to retain the benefit without payment of value"); *Hair Club for Men, LLC v. Lailuma Ehson & Illusion Day Spa, LLC*, No. 1:16-cv-236, 2016 WL 4577019, at *8 (E.D. Va. Aug. 31, 2016) (denying counterclaim for unjust enrichment and noting that "[defendant] may have been enriched by learning [plaintiff's] trade secrets and the identities of [plaintiff's] clients, but this enrichment was not unjust because she 'paid' for this enrichment through her employment with [plaintiff].").

## V.    CONCLUSION

For the foregoing reasons and based on the authorities set forth above, the FAC should be dismissed in its entirety.

Dated: March 29, 2019                      Respectfully submitted,

                                           *s/ Cathy R. Gordon*
                                           Cathy R. Gordon (PA ID. 56728)
                                           Vincent P. Lamperski (PA ID. 318443)
                                           LITCHFIELD CAVO LLP
                                           603 Stanwix Street
                                           Two Gateway Center
                                           Pittsburgh, PA 15222
                                           Telephone: (412) 291-8243
                                           Facsimile: (412) 586-4512
                                           Email: gordonc@litchfieldcavo.com
                                                     lamperski@litchfieldcavo.com


                                           *s/ David A. Coulson*
                                           David A. Coulson (FL Bar No. 176222)*
                                           Elisa M. Hevia (FL Bar No. 1003009)*
                                           GREENBERG TRAURIG, P.A.
                                           333 S.E. 2nd Avenue, Suite 4400
                                           Miami, Florida 33131
                                           Telephone: (305) 579-0754
                                           Facsimile: (305) 579-0717
                                           Email: coulsond@gtlaw.com
                                                     heviae@gtlaw.com

                                                *Admitted Pro Hac Vice*

                                           **Attorneys for Defendants**
                                           *Champion Petfoods USA Inc. and*
                                           *Champion Petfoods LP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of March, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ David A. Coulson*
DAVID A. COULSON

## SERVICE LIST

Charles E. Schaffer
Daniel C. Levin
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com
dlevin@lfsblaw.com

Aaron Rihn
ROBERT PEIRCE & ASSOC., P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229
arihn@peircelaw.com