# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

**ANTHONY CESARE, ELIZABETH DONATUCCI and TAYLOR KENNEDY,** individually, and on behalf of all others similarly situated,

|  | Case No. 2:18-cv-00744-CB |

**Plaintiffs,**

**v.**

**CHAMPION PETFOODS, USA INC. and CHAMPION PETFOODS, LP,**

**Defendants.**

## PLAINTIFFS CESARE, DONATUCCI, AND KENNEDYS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

**Page**

I. BACKGROUND ...................................................................................................... 1

II. ARGUMENT ......................................................................................................... 3

    A. *Loeb* and *Reitman* ......................................................................................... 4

    B. Plaintiffs state claims that satisfy *Iqbal* and *Twombly* ................................ 5

        1. Plaintiffs' claims are not based solely on heavy metals ....................... 5

        2. Plaintiffs state a claim based on the ingredients in the Champion dog
           food they purchased .......................................................................... 5

    C. Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and
       Consumer Protection Law (Count I), Fraudulent Omission (Count IV),
       And Negligent Misrepresentation (Count VI) are properly pled ...................... 8

        1. The economic loss doctrine will not bar any of Plaintiffs' claims ........... 8

          a. UTPCPL ............................................................................................ 9

          b. Negligent Misrepresentation ........................................................... 10

          c. Fraudulent Omission ....................................................................... 12

        2. Plaintiffs' claims for Fraudulent Omission, Negligent Misrepresentation,
          And the UTPCPL are pled with the requisite particularity ......................... 13

        3. Plaintiffs allege reliance on Champion's statements and omissions to
          to properly state claims of negligent misrepresentation, fraudulent
          omission, and under the UTPCPL ........................................................... 15

        4. Plaintiffs sufficiently allege facts that establish that Champion
          had a duty to disclose ........................................................................... 16

    D. Plaintiffs allege detailed facts supporting their breach of express
       warranty claim ......................................................................................... 18

    E. Plaintiffs allege detailed facts supporting their breach of implied
       warranty of merchantability claim ............................................................. 22

F. Plaintiffs' unjust-enrichment claim is properly pled............................................................ 24

III. CONCLUSION..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112
(2d Cir. 1984) ........................................................................................................... 17

*Air Prod. & Chemicals, Inc. v. Eaton Metal Prod. Co.*, 256 F. Supp. 2d 329
(E.D. Pa. 2003) ........................................................................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 3

*Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005) ................................... 10, 13

*Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17CV00084, 2017 WL 7732876
(W.D. Pa. May 26, 2017) .......................................................................................... 20

*Catania v. Zurich Am. Ins. Co.*, No. 13-1278, 2014 WL 12599599 (W.D. Pa. June 16,
2014) ........................................................................................................................ 7

*Datavision--Prologix, Inc.*, No. CIV.A. 04-CV-4271, 2005 WL 974933
(E.D. Pa. Apr. 26, 2005) .......................................................................................... 12

*Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018)………………………………………………………..10, 11, 12

*Donachy v. Intrawest U.S. Holdings, Inc.*, No. CIV.A. 10-4038 RMB, 2012 WL 869007,
(D.N.J. Mar. 14, 2012) ............................................................................................. 14

*Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009) ....................... 10

*Fleisher v. Fiber Composites, LLC*, No. CIV.A. 12-1326, 2012 WL 5381381
(E.D. Pa. Nov. 2, 2012) ............................................................................................ 19

*Gaudie v. Countrywide Home Loans*, 683 F.Supp.2d 750 (N.D. Ill. 2010) ........................................... 14

*Gernhart v. Specialized Loan Servicing LLC*, No. CV 18-2296, 2019 WL 1255053
(E.D. Pa. Mar. 18, 2019) .......................................................................................... 11

*Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank Indemnification Fund*,
82 A.3d 485 (Pa. Commw. Ct. 2013) ....................................................................... 16

*Goleman v. York Int'l Corp.*, No. CIV.A. 11-1328, 2011 WL 3330423
   (E.D. Pa. Aug. 3, 2011) ............................................................................ 13

*Gross v. Stryker Corp.*, 858 F. Supp. 2d 466 (W.D. Pa. 2012) ........................... 18

*Haagensen v. Supreme Court of Penn.*, 390 F. App'x 94, 97 (3d Cir. 2010) ........................................ 3

*Horan v. Wilcox & Fetzer Ltd.*, 153 F. App'x 100 (3d Cir. 2005) ........................................ 3

*Hunt v. United States Tobacco Company*, 538 F.3d 217 (3d Cir. 2008) ................. 16

*In re Able Labs. Sec. Litig.*, 2008 WL 1967509 (D.N.J. Mar. 24, 2008) ........................................ 14

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608
   (D.N.J. 2015) ............................................................................ 14

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ........................ 7, 15

*In re: Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-1814(JBS),
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ........................................ 17

*In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................ 14

*In re Whirlpool Corp. Front-Loading Washer*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ..................... 14

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818 (3d Cir. 1999) .................... 19

*Loeb v. Champion Petfoods USA Inc.*  359 F. Supp. 3d 597 (E.D. Wis. 2019) ................. 4

*Lovelace v. Nationwide Mut. Ins. Co.*, No. CV 18-2701, 2018 WL 3818911 (E.D. Pa.
   Aug. 10, 2018) ............................................................................ 9, 10

*McElwee Grp., LLC v. Mun. Auth. of Borough of Elverson*, 476 F. Supp. 2d 472
   (E.D. Pa. 2007) ............................................................................ 13

*New Berry, Inc. v. Manitoba Corp.*, No. 2:18-CV-01528-MJH, 2019 WL 452493
   (W.D. Pa. Feb. 5, 2019) ............................................................................ 11

*Phillips v. Cricket Lighters*, 841 A.2d 1000 (Pa. 2003) ........................................ 12

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........................................ 4

*Piscopo v. Pub. Serv. Elec. & Gas Co.*, 650 F. App'x 106 (3d Cir. 2016) ........................ 3

*Pittston Co. Ultramar Am. v. Allianz Ins. Co.*, 124 F.3d 508 (3d Cir. 1997) ...................................... 10

*Reitman et al v. Champion Petfoods USA, Inc. et al*, CV181736DOCJPRX, 2019 WL
   1670718 (C.D. Cal. Feb. 6, 2019) .......................................................................................... passim

*Robinson v. Jiffy Exec. Limousine Co.*, 4 F.3d 237 (3d Cir. 1993) ......................................... 10

*Savage v. Connecticut Gen. Life Ins., Co.*, No. CIV. A. 96-1709, 1996 WL 434288
   (E.D. Pa. July 31, 1996) .............................................................................................................. 8

*Sessa v. Riegle*, 427 F. Supp. 760 (E.D. Pa. 1977) ............................................................... 21

*Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737(E.D. Pa. 2007) ............................................ 23

*Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331 (E.D. Pa. 2012) ........................... 24

*Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226 (E.D. Pa.
   Dec. 23, 2010) .......................................................................................................................... 10

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007) ............................................................ 16

*Weir by Gasper v. Estate of Ciao*, 556 A.2d 819 (Pa. 1989) ................................................. 17

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) ........................................... 9,10,12

## <u>OTHER CITES</u>

Fed. R. Civ. P. 9(b) ............................................................................................................... 13, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 3

Fed. R. Civ. P. 59(e) ..................................................................................................................... 4

1 Motions in Federal Court § 5:133 (3d ed.) ................................................................................ 7

13 Pa.C.S. § 2313 (a)(1) ............................................................................................................. 18

13 Pa.C.S. § 2313 (a)(2) ............................................................................................................. 18

13 Pa.C.S. § 2314 (b)(2)-(6) ....................................................................................................... 23

13 Pa.C.S. § 2314 (b)(3) ............................................................................................................. 22

*Biologically Appropriate: A New Class Of Meat-Rich Foods To Mirror The Evolutionary Diet*, ACANA, https://acana.com/usa/about-acana/biologically-appropriate (last visited Apr. 28, 2019) ................................................................................................................ 21

Plaintiffs Anthony Cesare ("Cesare"), Elizabeth Donatucci ("Donatucci"), and Taylor Kennedy ("Kennedy") (collectively "Plaintiffs"), individually and on behalf of others similarly situated, submit this Response in Opposition to the Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Motion") (Doc. 36) and supporting brief (Doc. 37) filed by Defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively "Champion").

Plaintiffs' Amended Class Action Complaint ("Complaint") (Doc. 29-1) alleges that Champion made material omissions as well as deceptive, false, and misleading misrepresentations about its dry dog food products, falsely claiming, among other things, that its products contain healthy, high-quality, and regionally-sourced ingredients, its products are composed of ingredients fit for human consumption prior to inclusion in its foods, and its products are biologically appropriate. Doc. 29-1 ¶¶ 2, 11–30. In truth, Champion produces its dog food from animal byproducts, does not source its ingredients regionally, and its ingredients are never fit for human consumption prior to inclusion in its foods because they contain hair, high levels of heavy metals, and almost no valuable muscle meat. *Id.* at ¶¶ 17, 22, 24, 29. Plaintiffs and the other Class members were injured because they paid a premium price for what they believed was a premium product comprised of premium ingredients; however, they received an inferior and contaminated product.

Champion moves to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Doc. 36, p.1. As demonstrated in this response, Champion disregards Plaintiffs' well-pled and factually supported allegations, and its Motion should be denied.

## I.   BACKGROUND

Champion sells premium-priced dog food under the Orijen and Acana brand names. Doc. 29-1 ¶ 1. Champion's packaging states that its products are "Biologically Appropriate[,]" contain "fresh, regional ingredients[,]" and are made from ingredients "fit for human consumption prior to inclusion in our foods." *Id.* Based on these representations and others, consumers pay premium prices

for Champion's products, "as much as four times the price charged by national competitors[.]" *Id.*
Champion's packaging misrepresents that its products are fresh, regional, sourced from "PEOPLE
[THEY] TRUST", and "fit for human consumption prior to inclusion in [its] foods." *Id.* at ¶¶ 1, 18-
20, 22, 24, 29.   Relying on Champion's misrepresentations and omissions, Plaintiffs purchased
Champion's products because they believed the products were a healthy, high-quality, and premium
product for their dogs.   *Id.* at ¶¶ 6-7.

Contrary to Champion's representations, its products do not contain fresh ingredients.
Instead, "Champion: (a) knowingly uses expired ingredients in the Products; (b) obtains meal ingredients
and fats from unsanitary pet food rendering facilities around the world; (c) uses a variety of ingredients
that are frozen; and (d) routinely utilizes 'regrinds' (i.e., items that were not fit to be sold after their original
preparation) in the Products, even if the Product is a different diet from the 'regrind.'" Doc. 29-1 ¶ 18.
Contrary to Champion's representations, its products do not contain regional ingredients.   Rather,
"Champion: (a) imports most of its ingredients from outside the Commonwealth of Kentucky; (b) a
substantial portion of those ingredients are imported from outside the United States and from as far away
as New Zealand, Morocco, Denmark, and Peru; and (c) the few ingredients Champion sources from
Kentucky are first shipped over 1,000 miles away to New Bedford, Massachusetts for further processing
before being shipped to Champion's Kentucky facility." *Id.* at ¶ 19.

Champion's claim that it sources its ingredients from "PEOPLE WE TRUST" is false because
"Champion's ingredients are: (a) obtained through a complex, convoluted supply chain where Champion
may be unaware of the origin of the ingredient; and (b) a typical Champion ingredient supply chain
includes: a pet food ingredient broker, who contracts with a "secondary processor" (usually a pet food
rendering facility), who obtains inedible animal byproducts from one or more "primary processors"
(slaughterhouses where valuable human-edible muscle meat is removed), and who obtains animals from
one or more farms." *Id.* at ¶ 20.   Champion's representation that its ingredients are at one point fit for

human consumption is false "because the vast majority of animal ingredients Champion uses arrive with bills of lading clearly designating the material to be inedible and unfit for human consumption," it uses ingredients that include excessive quantities of hair, and its ingredients have heavy metal concentrations far above levels that humans consume. *Id.* at ¶¶ 22, 24, 29.

The resulting economic injury is that Plaintiffs paid a premium price for a product they believed was high-quality; however, Plaintiffs received an inferior, contaminated product and one that was not healthy, high quality, biologically appropriate, or made of ingredients fit for human consumption. Doc. 29-1 ¶¶ 1, 3, 6, 7, 30. Plaintiffs would not have purchased the products or paid such a large premium had they been aware that Champion's products did not remotely conform to the representations Champion made about its products. *Id.* at ¶¶ 6, 7, 30. Champion's Motion disregards these well-pled and factually supported allegations.

## II.   **ARGUMENT**

In ruling on a Rule 12(b)(6) motion to dismiss, this Court must "construe the complaint in the light most favorable to the plaintiff[.]" *Piscopo v. Pub. Serv. Elec. & Gas Co.*, 650 F. App'x 106, 108 (3d Cir. 2016) (citation omitted). Additionally, this Court must "accept as true all well pleaded factual allegations [of the plaintiff] and draw all reasonable inferences in [its] favor[.]" *Horan v. Wilcox & Fetzer Ltd.*, 153 F. App'x 100, 101 (3d Cir. 2005). A complaint must be supported by well-pled factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and a defendant must be given fair notice of the grounds upon which a claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

In the Third Circuit, "[a] district court must allow a curative amendment when a complaint is vulnerable to Rule 12(b)(6) dismissal unless an amendment would be inequitable or futile." *Haagensen*

*v. Supreme Court of Penn.*, 390 F. App'x 94, 97 (3d Cir. 2010) (quotations and citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") (citation omitted).

### A.     *Loeb* and *Reitman*

In its motion, Champion relies on the recent opinion granting summary judgment in *Loeb v. Champion Petfoods USA Inc.* 359 F. Supp. 3d 597 (E.D. Wis. 2019). Champion argues that this Court should not wait for summary judgment to decide that "Plaintiffs have failed to allege that the levels of heavy metals in the dog food products exceed a known baseline, reference point, guideline or standard and would be quantified as excessive." Doc. 37, pp.7-8. In *Loeb,* the Court denied Champion's Motion to Dismiss, but later, before discovery was completed, decided Champion's Motion for Summary Judgment (without considering the evidence Plaintiff uncovered in discovery) and concluded that Plaintiff's Complaint (which Plaintiff did not amend) "rests its allegations of substandard quality on one issue: the presence of heavy metals in the products." *Loeb,* 359 F. Supp. 3d at 601.[1] However, the *Loeb* Court said nothing about any of the other quality problems that Plaintiff now raises because Loeb never amended her complaint to include these theories. *Id.* at 604-605.

In another recent decision, *Reitman et al v. Champion Petfoods USA, Inc. et al* the district court denied Champion's motion to dismiss. No. CV181736DOCJPRX, 2019 WL 1670718 (C.D. Cal. Feb. 6, 2019). Pertinent for this particular motion, the district court rejected Champion's reliance on its White Paper. *See id.* at 3. The court also held that "biologically appropriate" and made from "fresh regional ingredients" indeed "[a]re disputable facts that cannot be dismissed as mere puffery or opinions[,]" permitting the plaintiffs an opportunity to prove these statements are false through

---

[1] On February 26, 2019, Loeb filed a Motion Pursuant to Fed. R. Civ. P. 59(e) for Entry of an Order Vacating Judgment. On March 19, 2019, Champion filed a response. And on April 2, 2019, Loeb filed a reply. The district court has not yet ruled on this matter.

discovery.  *Id.* at. 4  The court also held that plaintiffs had sufficiently alleged a duty to disclose and their reliance on the biologically appropriate and fresh regional ingredients representations was sufficient to support claims for both breach of express and implied warranties.  *Id.* at 5-6.  Finally, the district court permitted plaintiffs' unjust enrichment claim to proceed because "[p]laintiffs ha[d] sufficiently alleged facts supporting a claim that they purchased food at a premium based on false misleading representations."  *Id.* at 6.  Accordingly, just like the *Reitman* Court, Champion's Motion to Dismiss should be denied in its entirety.

      **B.**      **Plaintiffs state claims that satisfy *Iqbal* and *Twombly*.**

      **1.**  **Plaintiffs' claims are not based solely on heavy metals.**

The Amended Complaint retains the heavy metal allegations. Doc. 29-1  ¶¶ 2, 25-26, 29. This case is about Champion's products containing inedible and contaminated animal byproducts, hair, plastic, livestock ear tags, insects, and digestive organs that are often sourced from international suppliers and shipped through middlemen throughout the continent.  *Id.* at ¶¶ 2, 18, 19, 24-25.  The additional facts in the Amended Complaint further demonstrate that Plaintiffs purchased fundamentally different and less valuable products than Champion marketed and represented.  *Id.* at ¶ 3.  For example, "[i]f [Champion's] Products were made from human-grade ingredients prior to inclusion in the Products, as Defendants represented, the levels of heavy metals in the Products would be similar to that found in foods consumed by humans.  The fact that the Products contain significantly higher levels of heavy metals than those found in human foods is strong evidence that [Champion's] representations are false and deceptive."  Doc. 29-1 ¶ 29.  Plaintiffs' Amended Complaint adds important factual allegations establishing that Champion is liable for the conduct alleged.  This does not diminish the value of any of Plaintiffs' claims

      **2.**  **Plaintiffs state a claim based on the ingredients in the Champion dog food they purchased.**

Plaintiffs' Complaint alleges that Champion makes several false and deceptive representations

on its Products' packaging.[2]  First, the Complaint alleges that Champion falsely represents that it makes its Products with regionally sourced, high-quality ingredients that are biologically appropriate and fit for human consumption prior to inclusion in its foods.  To support these allegations, Plaintiffs allege that Champion's Products are: (a) made primarily from animal byproducts obtained from pet food processors throughout the United States and worldwide; (b) contain ingredients of a much lower quality that what Champion represents; and (c) are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.  Doc. 29-1 ¶¶ 17, 26-29.

Second, Plaintiffs' Complaint alleges that Champion falsely represents that its Products include "fresh" ingredients.  To support this allegation, Plaintiffs allege that Champion: (a) knowingly uses expired ingredients in its Products; (b) obtains meal ingredients and fats from unsanitary pet food rendering facilities around the world; (c) uses a variety of ingredients that are frozen; and (d) routinely utilizes "regrinds" (i.e., items that were not fit to be sold after their original preparation) in its Products, even if the Product is a different diet from the "regrind."  *Id.* at ¶ 18.

Third, Plaintiffs' Complaint alleges that Champion falsely represents that its Products include "regional" ingredients.  To support this allegation, Plaintiffs allege that Champion: (a) procures most of its ingredients from outside the Commonwealth of Kentucky; (b) imports a substantial portion of these ingredients from outside the United States and from as far away as New Zealand, Morocco, Denmark, and Peru; and (c) the few ingredients Champion sources from Kentucky are first shipped over 1,000 miles away to New Bedford, Massachusetts for further processing before being shipped to Champion's Kentucky facility.  *Id.* at ¶ 19.

Finally, Plaintiffs' Complaint alleges that Champion falsely represents that it obtains its ingredients from "People We Trust."  To support this allegation, Plaintiffs' Complaint alleges that

---

[2] Throughout the Complaint, when the class representatives refer to Champion's products, they are referring to all products they purchased as well as all those purchased by unnamed class members.

Champion obtains its ingredients  "[t]hrough a complex, convoluted supply chain where Champion may be unaware of the origin of the ingredient; and . . . a typical Champion ingredient supply chain includes: a pet food ingredient broker, who contracts with a "secondary processor" (usually a pet food rendering facility), who obtains inedible animal byproducts from one or more "primary processors" (slaughterhouses where valuable human-edible muscle meat is removed), and who obtains animals from one or more farms." *Id.* at ¶ 20.

This Court should also reject Champion's attempt to undermine Plaintiffs' pleading through admission of the entire White Paper.  First, the White Paper is a document outside the Complaint. "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  For a court to rely on documents outside the complaint, "it must [] be clear that there exist[s] no material disputed issues of fact regarding the relevance of the document."  § 5:133. Conversion to summary judgment motion—When motion will be converted, 1 Motions in Federal Court § 5:133 (3d ed.). Other than the raw numbers stated in the Complaint, the White Paper contains numerous materially disputed issues, especially given that many of its statements are hearsay.  Many of the facts in the Complaint directly conflict with Champion's deceptive and self-serving statements in the White Paper, and the California district court addressing the same issue agreed.  *See Reitman*, 2019 WL 1670718, at *3 ("Defendants' reliance on the White Paper—its own published analysis of the safety levels of naturally occurring heavy metals in its dog foods—is misplaced at this stage of the proceedings."). Accordingly, like the district court in *Reitman,* the White Paper and all references to the White Paper not drawn from Plaintiffs' Complaint should be stricken.

At this stage of the proceedings, it is only about whether Plaintiffs have alleged sufficient facts tied to their legal theories that make it plausible they are entitled to relief. *Catania v. Zurich Am. Ins. Co.*, No. 13-1278, 2014 WL 12599599, at *2 (W.D. Pa. June 16, 2014) (Bissoon, J.) ("In order to survive

the motion to dismiss, a complaint must do more than allege the plaintiff's entitlement to relief, and instead, must show such an entitlement with its facts.") (quotations and citation omitted).  Plaintiffs' allegations regarding their reliance on Champion's representations being fresh, biologically appropriate, and containing regionally-sourced ingredients meet the plausibility standard.  As a result, Plaintiffs' Complaint taken as a whole properly alleges that Champion markets its products in a deceptive, misleading and false manner.[3]

### C. Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count I), Fraudulent Omission (Count IV), and Negligent Misrepresentation (Count VI) are properly pled.

#### 1. The economic loss doctrine will not bar any of Plaintiffs' claims.

Champion argues that the economic loss doctrine bars the Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Fraudulent Omission, and Negligent Misrepresentation.  However, while the "[t]he economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from

---

[3] *See Reitman*, 2019 WL 1670718, at *3("The Court agrees that Plaintiffs have adequately pled facts that, taken as true, form a plausible claim that Champion made actionable false, misleading, or otherwise deceptive statements regarding the nature and quality of their pet food.").

 In the event this Court agrees with Champion that Plaintiffs' allegations are not specific enough, through amendment of its complaint, Plaintiffs can cure any deficiencies.  For example, Plaintiff Cesare purchased Orijen Puppy Large Breed.  Doc. 29-1 ¶ 6.  The label of this Champion product includes, among others, the following representations: "Biologically Appropriate," "Regional Ingredients," ingredients deemed fit for human consumption prior to inclusion in Champion's products and the product is "not rendered."  If the Court deems it necessary, Plaintiffs can allege each specific representation each Plaintiff relied upon in each particular purchase of each Champion product.  However, Plaintiffs do not believe this is necessary.  Instead, Plaintiffs are seeking to prove that Champion engaged in deceptive and misleading marketing practices across all of its product lines.

Moreover, when a court in this Circuit dismisses a complaint for lack of specificity, the court should permit complaint amendment as long as it believes the plaintiff can cure the defect.  *See Savage v. Connecticut Gen. Life Ins., Co.*, No. CIV. A. 96-1709, 1996 WL 434288, at *3 (E.D. Pa. July 31, 1996) (granting defendant's motion to dismiss for lack of specificity, however, without prejudice to plaintiff amending the complaint.).

a contract[,]" Pennsylvania courts have carved out exceptions for claims under the UTPCPL, negligent misrepresentation, and fraudulent omission. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (internal quotations omitted). Plaintiffs satisfy the applicable exceptions.

### a. **UTPCPL**

Considering the context for how the Third Circuit reached its holding in *Werwinski* is imperative. In *Werwinski*, "[b]ecause the question posed involved a controlling issue of state law, the Third Circuit first turned to the Pennsylvania Supreme Court for guidance. However, the Pennsylvania Supreme Court had not spoken on the issue." *Lovelace v. Nationwide Mut. Ins. Co.*, No. CV 18-2701, 2018 WL 3818911, at *2 (E.D. Pa. Aug. 10, 2018). "[T]he Third Circuit was left to predict how the highest court in Pennsylvania would rule by looking to the decisions of Pennsylvania's intermediate courts." *Id.* However, at the time of *Werwinski,* Pennsylvania's intermediate appellate courts had not addressed whether the economic loss doctrine would bar a UTPCPL claim in a published opinion. *Id.* Accordingly, the Third Circuit looked outside of Pennsylvania. *Id.*

> The landscape, however, changed dramatically when the Pennsylvania Superior Court decided *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013). In *Knight*, the appellees asserted that the economic loss doctrine barred the appellant's UTPCPL claim because only economic damages had been alleged. *Id.* at 951. The Superior Court disagreed. It concluded that "[t]he claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims." *Id.* The decision in *Knight* was recently followed in another case before the Pennsylvania Superior Court, *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) ("Dixon's UTPCPL claim is not barred by the economic loss doctrine.").

*Id.* at 3. Therefore, as pointed out last year, the landscape has changed since *Werwinski* and Pennsylvania courts have now held that "the economic loss doctrine does not apply to UTPCPL claims." *Id.* (quotations and citation omitted).

Regarding any contention by Champion that this Court is bound by *Werwinski* until the Third Circuit or Pennsylvania Supreme Court hold otherwise, Champion ignores a key exception set forth

in this jurisdiction.  While the Third Circuit is not bound by Pennsylvania's intermediate appellate courts their decisions are "'a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Pittston Co. Ultramar Am. v. Allianz Ins. Co.*, 124 F.3d 508, 516 (3d Cir. 1997).  When the Third Circuit decided *Werwinski* it had to look outside the Commonwealth because the Pennsylvania Supreme Court had not addressed the issue and the intermediate appellate courts had not done so in a published opinion.  *Lovelace*, 2018 WL 3818911, at *2.  However, since *Werwinski* was decided, the intermediate appellate courts in Pennsylvania have spoken in both *Knight* and *Dixon*. Accordingly, federal district courts are no longer bound by the Third Circuit's prediction in *Werwinski*. *See Robinson v. Jiffy Exec. Limousine Co.*, 4 F.3d 237, 242 (3d Cir. 1993) (reversing its previous prediction of how the New Jersey Supreme Court would rule after it had the "the benefit of two intermediate state appellate decisions directly on point which undermine our former judgment."); *see also Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *4 (E.D. Pa. Dec. 23, 2010) ("Of course, [a federal district court] must follow the Court of Appeal's prediction of Pennsylvania law as a general rule, except when the state's highest court issues a decision contradicting that prediction *or state intermediate appellate court's decisions subsequently indicate that prediction has not come to pass*.") (citations omitted) (emphasis added).

### b.  Negligent Misrepresentation

Unlike Champion suggests, the economic loss rule does not bar Plaintiffs' negligent misrepresentation claim.  Plaintiffs refer the Court to the Pennsylvania Supreme Court's recent decision in *Dittman v. UPMC* which significantly reduces the potential scope of Pennsylvania's economic loss doctrine. 196 A.3d 1036, 1054 (Pa. 2018) (Addressing two of its pertinent cases on the economic loss doctrine, the Pennsylvania Supreme Court held "[h]aving set forth our decisions in [*Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005)] and [*Excavation Techs., Inc. v.*

*Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009)], we hold that those cases do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages."). Rather, "[u]nder Pennsylvania's economic loss doctrine, recovery for purely pecuniary damages is permissible under a negligence theory[,] provided that the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Dittman*, 196 A.3d at 1038. Under *Dittman*, the key to the Court's analysis is the source of the respective duty. *See New Berry, Inc. v. Manitoba Corp.*, No. 2:18-CV-01528-MJH, 2019 WL 452493, at *4 (W.D. Pa. Feb. 5, 2019); *see also Gernhart v. Specialized Loan Servicing LLC,* No. CV 18-2296, 2019 WL 1255053, at *4 (E.D. Pa. Mar. 18, 2019).

Here, Plaintiffs have sufficiently alleged that Champion violated a common law duty that is independent of any contractual duty between the parties. In the Complaint, Plaintiffs allege as follows: "[i]ndependent of any contractual relationship between the parties, Defendants had a duty to fairly and accurately disclose and represent their Products on their labels, website, and advertising and marketing literature. However, likely aware of how consumers make purchasing decisions in its industry, Defendants used these misrepresentations regarding its Products' quality to command a premium price from consumers." Doc. 29-1 ¶ 90.

In the unlikely event this Court finds that no common law duty exists, the creation of a new duty to preclude corporate conduct such as Champion's only makes sense. In Pennsylvania, in the absence of an existing common law duty of care courts

> [m]ust weigh the following five factors: (1) the relationship between the parties; (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution. No one of these five factors is dispositive. Rather, a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant.

*Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008–09 (Pa. 2003) (quotations and citation omitted). Plaintiffs had a relationship with Champion from purchasing its products. Champion also has much more information at its disposal than Plaintiffs regarding the quality of its products.   Champion's misleading representations caused consumers to pay a premium price for an inferior product and these representations lack any social utility.   Champion's misleading representations led consumers to overpay for inferior products.  The foreseeability of this harm is quite apparent from the case Plaintiffs bring.  Imposing a duty on Champion will not have significant consequences because Plaintiffs only seek to prevent Champion (and other similar companies) from omitting key information and engaging in misleading representations. Public interest in imposing such a duty is high because such a duty would add another tool to hold businesses accountable when they engage in deceptive business practices to mislead consumers.  The court imposing such a duty also comports with the legislative purpose of the UTPCPL.

Next, Champion unpersuasively cites *ScanSource, Inc. v. Datavision--Prologix, Inc.*, No. CIV.A. 04-CV-4271, 2005 WL 974933, at *4 (E.D. Pa. Apr. 26, 2005).  Doc. 37, p.14.  *ScanSource* is not relevant. First, while the district court in *ScanSource* did not allow the plaintiff to pursue a negligent misrepresentation claim, it applied Pennsylvania law before the Pennsylvania Supreme Court decided *Dittman.  ScanSource, Inc.*, 2005 WL 974933, at *3 n.2.  In addition, the economic loss doctrine would bar the plaintiff's claim in *ScanSource* after *Dittman* because plaintiff failed to base their negligent misrepresentation claim off a duty independent of the parties' contractual relationship.  *See ScanSource, Inc.*, 2005 WL 974933, at *3.  Here, Plaintiffs pursue claims based off an independent legal duty that Champion had to fairly and accurately represent its products to consumers.

### c.  Fraudulent Omission

Champion's cite to *Werwinski* is misleading because while the Third Circuit did hold that the economic loss doctrine bars claims of intentional fraud, it reached its holding based on a prediction

of how the Pennsylvania Supreme Court would rule.  However, courts have declined to follow *Werwinski* and the Pennsylvania Supreme Court decided *Dittman* and *Bilt-Rite*, carving out exceptions to the economic loss doctrine for torts with duties that arise irrespective of a party's contractual relationship and against parties who negligently supply information.  "The Pennsylvania Supreme Court's policy considerations [from *Bilt-Rite*] apply even more forcefully in an intentional misrepresentation context.  If Pennsylvania allows liability for an architect or engineer who is negligent in preparing a report, surely it would allow liability for [] one who is reckless or fraudulent[.]" *McElwee Grp., LLC v. Mun. Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 477 (E.D. Pa. 2007).

> [T]he economic loss doctrine is premised on the notion that parties to a contract may protect themselves from negligence or defective products by negotiating the liability terms of the contract. *East River S.S. Corp.,* 476 U.S. 858, 872–73, 106 S.Ct. 2295, 90 L.Ed.2d 865. We believe that in both theory and practice, it is impracticable, if not impossible, for parties to negotiate terms regarding what happens if one of them is intentionally deceiving the other.

*Air Prod. & Chemicals, Inc. v. Eaton Metal Prod. Co.*, 256 F. Supp. 2d 329, 336 (E.D. Pa. 2003).

### 2.  Plaintiffs' claims for Fraudulent Omission, Negligent Misrepresentation, and the UTPCPL are pled with the requisite particularity.

Champion also raises the particularity of Plaintiffs' pleading under Rule 9(b).  Doc. 37, p.18.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  As a threshold matter, while Plaintiffs' UTPCPL claim implicates fraud, it is not based entirely on fraudulent conduct.  For example, Plaintiffs allege Champion "engaged in *deceptive conduct* which created the likelihood that Plaintiffs would misunderstand the nature of the Products when [Champion] represented that [its] Products were fit for human consumption prior to inclusion in [its] food when [Champion] knew most consumers would reasonably interpret this phrase as fit for human consumption."  Doc. 29-1 ¶ 43 (emphasis added).  Since not all these practices implicate fraud and to the extent that Plaintiffs' UTPCPL claim is based on them, the UTPCPL claim cannot be dismissed under Rule 9(b).  *See Goleman v. York Int'l Corp.*, No. CIV.A. 11-1328, 2011 WL 3330423,

at *8 (E.D. Pa. Aug. 3, 2011) ("A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b).") (citation and quotations omitted).  The same logic applies to Plaintiffs' negligent misrepresentation claim.  *See Donachy v. Intrawest U.S. Holdings, Inc.*, No. CIV.A. 10-4038 RMB, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012) (Where a "negligent misrepresentation claim is specifically alleged as a separate claim, it is not subject to Rule 9(b)'s heightened pleading requirements …") (citations and footnote omitted).

Moreover, where a fraud claim is based on a theory of fraudulent omission, a plaintiff cannot be expected to plead a specific time or place, or to identify a defendant's particular failure to act.  *See Gaudie v. Countrywide Home Loans*, 683 F.Supp.2d 750, 756 (N.D. Ill. 2010) (holding that Rule 9(b) standards are relaxed when details about the fraud are "within the defendant's exclusive knowledge").  Under such circumstances, it suffices for a plaintiff to allege what representations flowed from the fraudulent scheme.  *See, e.g., In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1172 (C.D. Cal. 2010); *In re Whirlpool Corp. Front-Loading Washer*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009).  Rule 9(b) only requires that "Plaintiffs inject[] sufficient particularity into their fraud [or mistake] allegations to put Defendant on notice as to the specific misconduct at issue."  *In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 621 (D.N.J. 2015).  Rule 9(b) does not require "[e]very material detail of the fraud such as date, location, and time . . ." *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *11 (D.N.J. Mar. 24, 2008) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Plaintiffs' pleading easily meets these requirements.[4]  Champion omitted that its products do not conform to its marketing representations because it produces its dog food from animal byproducts, it does not use fresh, regional ingredients, and its ingredients are never fit for human

---

[4] *See Reitman*, 2019 WL 1670718, at *4-5 (concluding that Plaintiffs had satisfied Rule 9(b) for their consumer protection and fraud-based claims).

consumption prior to inclusion in their foods because they contain hair, high levels of heavy metals, and almost no valuable muscle meat.  Doc. 29-1 ¶¶ 17, 18, 22, 24, 29.  Champion should have never used such fraudulent representations, but it intentionally chose to do so to extract a substantial profit from consumers.  *Id.* at ¶¶ 44-45, 80-81, 87.  Because of its conduct, Champion obtained a premium price for what was an inferior product.  *Id.* at ¶¶ 3, 6, 7.  Champion's Motion should accordingly be denied.[5]

### 3.  Plaintiffs allege reliance on Champion's statements and omissions to properly state claims of negligent misrepresentation, fraudulent omission, and under the UTPCPL.

Champion's contention that Plaintiffs have not alleged justifiable reliance is not supported by the facts alleged in the Complaint.  Plaintiffs clearly allege they justifiably relied upon Champion's wrongful conduct, representations and omissions, and suffered harm as a result of this reliance. Plaintiffs plead that Champion's packaging and marketing materials intentionally made false statements about being biologically appropriate, made from ingredients fit for human consumption, and its products being composed of fresh regional ingredients, among others.  Doc. 29-1 ¶¶ 43, 54, 80, 91.

Champion, however, failed to disclose that its products did not conform to these representations: Champion produces its dog food from animal byproducts, it does not use fresh, regional ingredients, and its ingredients are never fit for human consumption prior to inclusion in their foods because they contain hair, high levels of heavy metals, and almost no valuable muscle meat.  *Id.* at ¶¶ 17, 18, 22, 24, 29.

---

[5] Should the Court disagree, Plaintiffs request leave to amend the complaint.  "Ordinarily where a complaint is dismissed on Rule 9(b) 'failure to plead with particularity' grounds alone, leave to amend is granted."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997).

Plaintiffs justifiably relied on Champion's false statements and omissions in deciding to purchase Champion's products and Champion intended such reliance because it was crucial to commanding a premium price. *Id.* at ¶¶ 1, 6, 7, 47, 81, 90; *see also Hunt v. United States Tobacco Company*, 538 F.3d 217, 221 (3d Cir. 2008) ("where a seller deceives a potential purchaser as to the nature, quality or origin of a product, it is easy to understand the purchaser's later claim that the misrepresented information was important to his purchasing decision[]"). Champion knew that its claims and omissions were false and that its products did not meet the standards to which it represented them to be. Doc. 29-1 ¶ 44, 80, 87  As a result of Champion intentionally withholding this information, Plaintiffs suffered damages in that they substantially overpaid for Champion's products. *Id.* at ¶¶ 6-7. Finally, Plaintiffs allege an ascertainable loss from Champion's representations and omissions because they paid a substantial premium for Champion's products and they never would have paid this substantial premium had they known Champion's representations and omissions were false or they would not have paid the premium price. *Id.* at ¶¶ 1, 6-7. Thus, Champion's contention that plaintiffs have not pled justifiable reliance and ascertainable loss is incorrect.[6]

### 4. Plaintiffs sufficiently allege facts that establish that Champion had a duty to disclose.

"[W]hile active concealment may constitute fraud, mere silence is not sufficient in the absence of a legal duty to disclose information.  [F]raud by omission is actionable only where there is an independent duty to disclose the omitted information." *Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013) (citations and

---

[6] Allegations concerning reliance create a highly factual matter ill-suited for determination under Rule 12(b)(6).  *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) (stating that "justifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction[]").

quotations omitted).   A duty to disclose occurs when"[o]ne occupies a superior position over the other; intellectually, physically, governmentally, or morally, with the opportunity to use the superiority to the other's disadvantage." *Weir by Gasper v. Estate of Ciao*, 556 A.2d 819, 825 (Pa. 1989) (citing *Union Trust Co. v. Cwynar,* 131 A.2d 133, 137 (Pa. 1957))[7]

Here, Plaintiffs have pled a duty to disclose consistent with *Union Trust Co.* because Champion held a superior position over Plaintiffs intellectually with the opportunity to use that superiority to the consumers' disadvantage.   Plaintiffs sufficiently pled this duty when they alleged that they relied on Champion's omissions and statements about its dog food in reaching their purchasing decisions.  Doc. 29-1 ¶¶ 79-80.   Champion used its superior position to its advantage by emphasizing misleading representations about its dog food, knowing full well that consumers were not in a position to examine them, but consumers would rely on them because the representations are specifically geared towards important considerations consumers make in purchasing dog food.   *Id.* at ¶¶ 1, 3, 6-7, 30, 79. Therefore, because Plaintiffs sufficiently pled that Champion had a duty to disclose, Champion's contention that Plaintiffs' fraudulent omission claim fails based on the pleadings is false. [8]

---

[7] *See In re: Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-1814(JBS), 2001 WL 1266317, at *21 (D.N.J. Sept. 30, 1997) (Addressing whether a manufacturer had a duty to disclose in the fraudulent concealment context, the court held "a defendant manufacturer has a duty to disclose its knowledge, if any, of material defects in the items manufactured, so long as the consumer could not be expected to otherwise obtain the information[]"); *see also Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 123 (2d Cir. 1984) (holding that a duty to disclose arises in the transactional setting "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge[]")(citation omitted).

[8] *See Reitman*, 2019 WL 1670718, at *5 ("Plaintiffs have also properly alleged facts giving rise to a duty to disclose.")

**D.  Plaintiffs allege detailed facts supporting their breach of express warranty claim.**

Count II clearly alleges a claim for breach of express warranty.  Doc. 29-1 ¶¶52–61.  Under Pennsylvania law, a seller, such as Champion, creates an express warranty through "[a]ny description of the goods which is made part of the basis of the bargain . . ." 13 Pa.C.S. § 2313 (a)(2).  Such a description "creates an express warranty that the goods shall conform to the description." *Id.*  In addition,  "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Id.* § 2313 (a)(1).  Moreover, "[a]n express warranty must be directed at consumers in order to induce purchases of the product." *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 501 (W.D. Pa. 2012) (quotations, citation and footnote omitted).  Pennsylvania law carefully distinguishes an express warranty from an opinion or affirmation of value from the seller.  *See* 13 Pa.C.S. § 2313 (b) ("It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.").

Plaintiffs satisfy these elements by pleading that the packaging of Champion's products and website constituted affirmations of fact (or descriptions) that were part of the basis of the bargain between the parties, and as a result, created express warranties. Doc. 29-1 ¶ 54. Champion's packaging made affirmations of fact (and descriptions) that its products are "Biologically Appropriate," have "Unmatched Regional Ingredients," its products utilize "Never Outsourced," ingredients, "ORIJEN features FRESH, RAW or DEHYDRATED INGREDIENTS, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods[,]" and "MADE WITH FRESH REGIONAL INGREDIENTS DELIVERED DAILY[.]"  *Id.* at ¶¶ 12, 14.  By

including these statements on its packaging, Champion directed these statements at consumers like the Plaintiffs.

Champion's products did not conform to these representations; rather Champion produces its products from animal byproducts, it fails to use fresh, regional ingredients, it outsources many of its ingredients, and finally, its ingredients are not fit for human consumption prior to inclusion in their foods because they contain hair, high levels of heavy metals, and almost no valuable muscle meat. *Id.* at ¶¶ 17, 18, 20, 22, 24, 29. Accordingly, such misrepresentations are enough to form express warranties.[9] Plaintiffs believed in these representations and relied on them in purchasing Champion's products. Doc. 29-1 ¶¶ 6-7, 56-57. Plaintiffs would not have purchased Champion's products or paid as much as they did if they had been aware that many of the representations on Champion's packaging were false. *Id.* at ¶¶ 6-7, 60, 73, 94. Champion has been aware of this defect but has chosen not to cure it, and as a result, Plaintiffs and Class members have been damaged. *Id.* at ¶ 59. Accordingly, Plaintiffs' claim for breach of express warranty is well pled.[10]

---

[9] *See Reitman*, 2019 WL 1670718, at *5 ("As discussed, the statements "biologically appropriate"; made from "fresh regional ingredients" . . . are assertions of fact of which the seller has special knowledge and as alleged were relied on by customers. Whether or not the statements are true is to be determined. But they are not subjective, and as alleged can support a claim for express breach of warranty.").

[10] *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 824 (3d Cir. 1999) (holding that "an express warranty is created when a promise is made by a seller to a buyer which relates to a good and becomes part of the basis of the bargain[]") (citation omitted); *see also Fleisher v. Fiber Composites, LLC*, No. CIV.A. 12-1326, 2012 WL 5381381, at *4 (E.D. Pa. Nov. 2, 2012) (concluding that representations in promotional materials that relate to the quality and characteristics of decking may be viewed as express warranties). The Third Circuit has also held a promise (or affirmation of fact) "is presumed to be a part of the basis of the bargain . . . once the buyer has become aware of the affirmation of fact or promise...." *Liberty Lincoln-Mercury, Inc.*, 171 F.3d at 825 (quotations and citation omitted). "The defendant may rebut this presumption by clear affirmative proof ... that the buyer knew that the affirmation of fact or promise was untrue." *Id.* (quotations, citation, and footnote omitted).

Champion, however, argues that Plaintiffs never explicitly state which statements they relied upon on Champion's packaging prior to making their purchases and accordingly "the purported 'warranties' cannot possibly become part of the basis of the bargain between Plaintiffs and Champion." Doc. 37, p.18.   However, this assertion mischaracterizes the allegations in Plaintiffs' Amended Complaint.   For example, "Plaintiff Cesare [states he] purchased the Products because he believed Champion's representations that they were healthy, included high quality, fresh, biologically appropriate and regionally sourced ingredients, and the Products were . . . high-quality food for his pets." Doc. 29-1 ¶ 6.   This allegation demonstrates that Plaintiff Cesare specifically relied, prior to making his purchase, on Champion's representations including that the products were biologically appropriate, fresh, and made from regional ingredients.   Plaintiffs Elizabeth Donatucci and Taylor Kennedy "purchased [Champion's] Products because they believed and relied on Champion's representations that their Products are healthy and include high quality, fresh, biologically appropriate and regionally-sourced ingredients." *Id.* at ¶ 7.   Unlike Champion suggests, Plaintiffs clearly state that they relied on the express warranties made on Champion's packaging, which makes these statements a basis of the bargain between the parties.

Champion also argues that that statements on their packaging such as "fresh, regional ingredients," and "biologically appropriate," do not constitute warranties because they were affirmations of the value of goods or opinion.   Doc. 37, p.18.   "[A] statement is not puffery if 'the claim is both specific and measurable by comparative research.'" *Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17CV00084, 2017 WL 7732876, at *3 (W.D. Pa. May 26, 2017) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)).

> In *Castrol*, the Court of Appeals addressed whether Pennzoil's advertising statement of "longer engine life and better engine protection" violated the Lanham Acts prohibition on false description of fact.   Pennzoil asserted the defense that their statements consisted of marketplace puffery and could not have violated the Lanham Act.   Pennzoil's claim of puffery was defeated because their advertising phrase was a specific statement with testable facts. The lack of direct reference did not allow

Pennzoil to claim puffery, as their statement created a necessary comparison to their competitors' products.

*Id.*

Champion's statements that its products contain "fresh regional ingredients," and are "biologically appropriate[,]" are specific statements with testable facts. *See Reitman*, 2019 WL 1670718, at *4 (holding that plaintiffs can prove the truth of these statements through discovery). Additionally, regarding "biologically appropriate," Champion makes clear that this is a specific statement with testable facts through its own marketing language. *See Biologically Appropriate: A New Class Of Meat-Rich Foods To Mirror The Evolutionary Diet*, ACANA, https://acana.com/usa/about-acana/biologically-appropriate (last visited Apr. 28, 2019) ("The Biologically Appropriate Concept Is Simple: Mirror The Quantity, Freshness, And Variety Of Meat That Nature Evolved Dogs And Cats To Eat. . . . ACANA's richly nourishing meat inclusions mirror your pet's evolutionary diet, excluding rice, potato, and tapioca, synthetic additives, and anything else Mother Nature didn't intend your dog or cat to eat."). Therefore, Champion's claim of puffery should be defeated like Pennzoil's.  Furthermore, Pennsylvania law requires the jury to determine whether a statement was an opinion rather than an express warranty.  *Sessa v. Riegle*, 427 F. Supp. 760, 765 (E.D. Pa. 1977).

Champion also contends that Plaintiffs have not pled facts demonstrating that any of Champion's statements in paragraph 54 of the complaint are untrue.  Doc. 37, p.18.  In making such a statement, Champion completely disregards Plaintiffs' well pled averments.  Plaintiffs have sufficiently alleged that Champion's products did not conform to those representations because Champion produces its dog food from animal byproducts, it does not use fresh, regional ingredients, and its ingredients are not fit for human consumption prior to inclusion in their foods because they contain hair, high levels of heavy metals, and almost no valuable muscle meat.  Doc. 29-1 ¶¶ 17, 18, 20, 22, 24, 29.  The facts supporting Plaintiffs' claim are clear and well pled, and Champion's Motion should be denied.

**E.      Plaintiffs allege detailed facts supporting their breach of implied warranty of merchantability claim.**

Count III clearly alleges breach of an implied warranty.  Doc. 29-1 ¶¶ 62–74.  In Pennsylvania, an implied warranty of merchantability is adopted from § 2-314 of the UCC, requiring that goods be "fit for the ordinary purposes for which [they] are used." 13 Pa.C.S. § 2314(b)(3).  "The implied warranty of merchantability [] arises by operation of [Pennsylvania] law and w[as] created to protect[] buyers from products *sold below commercial standards* or unfit for the buyer's purposes." *Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737, 751–52 (E.D. Pa. 2007) (citing *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)) (emphasis added).  In Pennsylvania:

> [t]o be merchantable, the products must:
>
> . . .
>
> (2) in the case of fungible goods, are of fair average quality within the description;
>
> . . .
>
> (5) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (6) conform to the promises or affirmations of fact made on the container or label if any.

13. Pa.C.S. § 2314 (b)(2)-(6).

Plaintiffs have specifically alleged that Champion's products do not conform to Pennsylvania's merchantability standards under Section 2314.  *Id.* § 2314.  As alleged in the Complaint, Champion's "[p]roducts do not meet the quality of their description because they do not contain fresh, regionally sourced, biologically appropriate ingredients and were not made from ingredients fit for human consumption prior to inclusion in Defendants' foods."  Doc. 29-1 ¶ 69.  In addition, Champion's "[p]roducts are not adequately contained, packaged and labeled because they are packaged as containing healthy, high-quality, and regionally-sourced ingredients, but instead contain much lower quality ingredients that are not sourced regionally, and were never fit for human consumption."  *Id.* at ¶ 70.

Finally, Champion's "[p]roducts also do not conform to the promises and affirmations of fact made on their containers, packaging and labels, website, and marketing literature because they do not consist of healthy, high-quality ingredients that would ever be fit for human consumption or canines as their packaging and labeling warrants." *Id.* at ¶ 71. The result is that Champion's products are unfit for their ordinary purposes, Champion was aware of this defect and intentionally chose not to cure it, and Plaintiffs were subsequently damaged. *Id.* at ¶¶ 59, 72-73. Accordingly, Plaintiffs' claim for breach of implied warranty of merchantability is well pled. [11]

Champion argues that Plaintiffs "[f]ail to plead non-conclusory facts supporting" their claims regarding why Champion's products are not merchantable. Doc. 37, p.20. This is simply not true. For example, Champion claims that its ingredients are fit for human consumption prior to inclusion in their foods, yet Plaintiffs have provided factual allegations that contradict this. *See* Doc. 29-1 ¶ 22 ("Champion's representation that its ingredients are fit for human consumption prior to inclusion of the Products is false because the vast majority of animal ingredients Champion uses arrive with bills of lading clearly designating the material to be inedible and unfit for human consumption, as depicted below."). This also dispenses with Champion's argument that "[P]laintiffs have not pled facts demonstrating that the dog food they purchased failed to comply with any representation on its packaging." Doc. 37, p.20.

Finally, Champion argues that "[P]laintiffs do not plead that their dogs suffered any ill effects from the Champion dog food[,]" so they cannot succeed on their breach of implied warranty of merchantability claim. *Id.* at p.20. Champion's argument, however, is not persuasive. Champion arguing about the lack of harm to Plaintiffs' dogs is a waste of the Court's time because it is not the injury that Plaintiffs seek to redress. Rather, Plaintiffs' detailed and specific factual averments establish

---

[11] *See Reitman*, 2019 WL 1670718, at *6 (concluding that Plaintiffs had stated actionable claims for their breach of implied warranty claims ).

that Champion's products are not merchantable, and Champion sold them far below commercial standards for high-quality dog food.  Doc. 29-1 ¶¶ 69-71.  As a result, Plaintiffs did not receive what they paid for: a premium product for their dogs.  *Id.* at ¶¶ 6-7, 30, 94.  Because Plaintiffs plead a plausible claim for breach of implied warranty supported by detailed factual averments, Champion's Motion should be denied.

> ### F.     Plaintiffs' unjust-enrichment claim is properly pled.

Count V alleges unjust enrichment.  Doc. 29-1  ¶¶ 84–88.  This claim has three elements: "(a) the plaintiff conferred a benefit on the defendant; (b) the defendant appreciated those benefits; and (c) acceptance and retention of those benefits would be inequitable under the circumstances without payment of value."  *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341 (E.D. Pa. 2012) (citation omitted).

Satisfying these elements, Plaintiffs plead that they and the Class conferred benefits on Champion by paying a premium price for Champion's products on the expectation that the products would conform with the representations on the packaging.  Doc. 29-1  ¶¶ 85, 86.  Champion knew it unjustly received these benefits because it knew that its products did not conform to the representations on its website and the products' labels.  *Id.* at ¶¶ 86-87.  But Champion nonetheless sold its products at premium prices knowing that those prices were inflated.  *Id.* at ¶ 87.  As a result, Champion has been unjustly enriched by its omissions and false and misleading statements, and this result violates the fundamental principles of justice and equity that underlie unjust enrichment.  *Id.* at ¶88.

Champion argues that Plaintiffs do not plead facts establishing that it would be inequitable for Champion to retain the benefits conferred by Plaintiffs.  Doc. 37, p.21.  This simply ignores Plaintiffs' allegations.  Champion made representations about the quality of its products to justify a premium price.  Doc. 29-1 ¶1.  Plaintiffs paid those premium prices expecting the products to conform to

Champion's representations. *Id.* at ¶ 86. But Champion's products did not conform to those representations.

Plaintiffs did not receive "exactly what was advertised[,]" as Champion wrongly contends. Doc. 37, p.21. Instead, they received a product that in no way conformed to its advertised quality. Doc. 29-1 ¶¶ 2-3, 30, 86-87. "Accordingly, Defendants continue to retain a benefit improperly obtained to the detriment of Plaintiffs and Class members." *Id.* at ¶ 87. The inequity here is apparent  While Champion attempts to downplay this injury, it is nonetheless real. *See id.* at ¶ 1 ("The substantial premium Champion charges can be as much as four times the price charged by national competitors (A 25-pound bag of 'Orijen Original Biologically Appropriate Dog Food' can cost $80 or more while other products such as a thirty-three-pound bag of 'Pedigree Adult Complete Nutrition' Dog Food is less than $20))  Accordingly, Plaintiffs' claim is appropriately and plausibly pled, and Champion's Motion should be denied.[12]

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Champion's Motion to Dismiss be denied.

Dated: May 2, 2019                         */s/ Charles E. Schaffer*

Aaron Rihn                                               Charles E. Schaffer
ROBERT PEIRCE & ASSOCIATES, P.C        David C. Magagna Jr.
2500 Gulf Tower                                    LEVIN, SEDRAN & BERMAN, LLP
707 Grant Street                                    510 Walnut Street, Suite 500
Pittsburgh, PA 15219-1918                      Philadelphia, PA 19106
(412) 281-7229 – Telephone                   (215) 592-1500 – Telephone
E-mail: *arihn@peircelaw.com*                E-mail: *cschaffer@lfsblaw.com*
                                                             E-mail: *dmagagna@lfsblaw.com*

---

[12] *See Reitman*, 2019 WL 1670718, at *6 ("As discussed, Plaintiffs have sufficiently alleged facts supporting a claim that they purchased food at a premium based on false misleading representations. The unjust enrichment claim thus survives.").