# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY CESARE, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 18-744 |
| v. | ) Judge Cathy Bissoon |
| CHAMPION PETFOODS USA INC., *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint ("Motion to Dismiss," Doc. 36). For the reasons below, Defendants' Motion to Dismiss will be granted in part, and denied in part.

### I. Memorandum

On June 5, 2018, Plaintiffs Anthony Cesare, Elizabeth Donatucci and Taylor Kennedy ("Plaintiffs") filed a Class Action Complaint on behalf of a putative class of Pennsylvania purchasers of dog food from Defendants Champion Petfoods USA Inc. and Champion Petfoods LP ("Defendants" or "Champion"). On February 26, 2019, Plaintiffs filed a Motion for Leave to File an Amended Complaint, which was granted on the same day, and the attached Amended Complaint ("FAC," Doc. 29-1) was deemed filed.

The FAC alleges that Defendants, nationwide sellers of premium-priced dry dog foods under the Orijen and Acana brand names ("Products"), have misrepresented the Products to sell them at higher prices—that is, more than four times the prices of their competitors. ¶¶1-2. Contrary to Defendants' representations, Plaintiffs claim that "the Products do not mirror what a dog would eat in the wild because they contain virtually no animal muscle meat and instead

consist largely of animal waste and byproducts"; "[t]he Products are not made from ingredients that are fresh and regionally sourced and, instead, contain ingredients sourced from foreign suppliers and shipped through middle men throughout the continent"; and "[t]he Products are also not made from ingredients of a quality fit for human consumption, as evidenced by the fact that the Products contain levels of heavy metals exponentially higher than those found in foods consumed by humans." Id. at ¶2.

Plaintiffs state that "Champion touts its products as 'The World's Best Petfood,'" (id. at ¶ 11), and that the Products' packaging materials contain various misrepresentations regarding their quality and ingredients, (id. at ¶¶ 12-14). For example, Plaintiffs claim that the packaging of one of the Products, Acana Appalachian Ranch Regional, states that it is "'Biologically Appropriate', contains 'Unmatched Regional Ingredients,' uses ingredients that are 'Never Outsourced,' and is filled with ingredients that are 'Delivered Fresh or Raw in Wholeprey ratios, and brimming with goodness and taste.'" Id. at ¶12.

Plaintiffs claim that another variety of Acana "states that the product is 'bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste,'" and "further boasting that all content is 'from poultry, fish and eggs passed fit for human consumption.'" FAC ¶16.

Likewise, according to Plaintiffs, the packaging of another Product, Orjen Original dry dog food, "touts the food as 'the fullest expression of our biologically appropriate and fresh regional ingredients commitment,' and further describes its supposed 'unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs – sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free." Id. at ¶¶13-15.

2

Plaintiffs contend that each of these claims were false and misleading. For example:

- "biologically appropriate" – Plaintiffs contend that the Products were made "primarily from animal byproducts obtained from pet food processors throughout the world," containing virtually no muscle meat, and "made from ingredients of a quality much inferior to that represented by Champion" such as "cartilage, bone [and] filtering organs…" Id. at ¶¶17, 25.

- "fresh" – Plaintiffs contend that Defendant "(a) knowingly uses expired ingredients in the Products; (b) obtains meal ingredients and fats from unsanitary pet food rendering facilities around the world; (c) uses a variety of ingredients that are frozen; and (d) routinely utilizes "regrinds" (i.e., items that were not fit to be sold after their original preparation) in the Products, even if the Product is a different diet from the 'regrind.'" Id. at ¶18.

- "regional" – Plaintiffs contend that Defendant mainly imports its ingredients from outside the Commonwealth of Kentucky, with many of those ingredients imported from outside the United States, including from areas as far as New Zealand. Plaintiffs also contend that the "few ingredients" sourced from Kentucky are processed in Massachusetts before being shipped back to Defendant's facility in Kentucky. Id. at ¶19.

These allegations give rise to six Counts against Defendants, all under Pennsylvania law: (I) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. §§ 201-1 et seq. (the "UTPCPL"); (II) breach of express warranty; (III) breach of implied warranty; (IV) fraudulent omission; (V) unjust enrichment; and (VI) negligent misrepresentation. FAC ¶¶39-95.

Defendants' Motion to Dismiss rests on seven arguments: (1) All claims in the First Amended Complaint ("FAC") fail to state a claim for relief; (2) The economic loss doctrine bars the UTPCPL, fraudulent omission and negligent misrepresentation claims; (3) Plaintiffs fail to plead the UTPCPL, fraudulent omission and negligent misrepresentation claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b); (4) Plaintiffs' fraudulent omission claim fails because they do not allege that Defendants had a duty to disclose; (5) Plaintiffs' breach of express warranty claim fails because they have not pleaded the existence of a warranty or facts suggesting that any of Defendants' statements are untrue; (6) Plaintiffs' breach of implied warranty claim fails because they do not allege that the dog food was unmerchantable or unfit for its ordinary use; and (7) Plaintiffs' unjust enrichment claim fails because they have not pleaded facts establishing that it would be inequitable for Defendants to retain any benefits conferred. Motion to Dismiss at ¶1.[1]

### A. All Claims

As a threshold matter, the Court will address Defendants' Rule 12(b)(6) argument, before addressing the merits of each individual count. Defendants argue that Plaintiffs cannot state any claims on either the alleged presence of heavy metals or based on the ingredients in the Products purchased. Defendants state that Plaintiffs have failed to show that the heavy metal content of Defendants' Products are "exponentially high" compared to reported averages in human foods, and cite its publicly available White Paper, published in May 2017, to support its contention. Def. Mem. at 7-8.

---

[1] Defendants' Motion to Dismiss is accompanied by a Memorandum of Law ("Def. Mem.," Doc. 37). Plaintiffs have responded in opposition ("Pl. Opp.," Doc. 42) to Defendants' Motion to Dismiss, and Defendants have replied ("Def. Reply," Doc. 43).

According to Defendants, the White Paper states that the presence of certain heavy metals is within the maximum tolerable limits established by the Federal Drug Administration in its Target Animal Safety Review Memorandum. Id. at 4. Plaintiffs respond that the presence of higher levels of heavy metals in Defendants' Products goes against Defendants' claims that their Products consist of "human-grade ingredients prior to inclusion in the Products." Pl. Opp. at 5. They also oppose Defendants' usage of the White Paper to support their arguments about the heavy metals in their Products. Id. at 7.

The Court finds that Plaintiff has opened the door to the admittance of the White Paper. Plaintiffs cite the White Paper as part of the FAC to support their allegations that Defendants' Products contain "high levels of heavy metals." FAC at ¶26. As this is an explicit basis for Plaintiffs' claims, the very case cited by Plaintiff supports admitting the White Paper. The general concern about courts looking to documents outside the complaint, lack of notice to the plaintiff, "is dissipated where plaintiff has actual notice … and has relied upon these documents in framing the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citations omitted).

A court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (internal quotations and citations omitted). While the facts in the White Paper are in dispute, neither party disputes the authenticity of the actual White Paper itself, and the Court will admit the White Paper.

Nonetheless, the Court agrees with the rationale in Reitman, and that Defendants' citations to the White Paper "do not prove whether the alleged statements are deceptive,

5

misleading, or false, especially in light of contradicting allegations in the [FAC]." Reitman v. Champion Petfoods, USA, Inc., 2019 WL 1670718, at *3 (C. D. Cal. Feb. 6, 2019).

Also, Defendants' claim in the White Paper that its Products purportedly contain heavy metal under the maximum tolerable limits for animal safety do not contradict Plaintiffs' claims that the heavy metal occurred in levels significantly higher than those safe for human consumption. The Court finds Plaintiffs' argument that the presence of significantly higher levels of heavy metals than those found in human foods is a sufficient fact that, taken as true, forms a plausible claim that Defendants' statements that its Products consist of "human grade ingredients prior to inclusion in the Products" were deceptive and misleading.

Similarly, the Court finds that Plaintiffs have alleged sufficient facts with respect to their claims that Defendants' marketing of the ingredients in their Products is false and misleading. Plaintiffs have alleged that contrary to Defendants' claims, ingredients are not "fresh" but are "expired"; rather than being "regional," ingredients are mostly "import[ed]…from outside the Commonwealth of Kentucky" with "a substantial portion [being] imported from outside the United States"; instead of being supplied by "PEOPLE WE TRUST," ingredients are acquired through a "complex, convoluted supply chain" with multiple processors that Defendants may be unaware of; and that ingredients are "clearly [designated by bills of lading] to be inedible and unfit for human consumption" before inclusion in the Products. FAC ¶¶18-20, 22, 28-29. These facts, if true, are sufficient under Fed. R. Civ. P. 12(b)(6).[2]

---

[2] The Court acknowledges that Defendants spend several pages disputing and conflating Plaintiffs' factual allegations, but this does not affect the sufficiency of Plaintiffs' pleading under the requisite Rule. See Reitman, 2019 WL 1670718, at *3 (affirming plaintiffs' arguments that the "labeling, packaging, marketing, and advertising 'must be taken as a whole'").

### B. Individual Claims

#### 1. Count I: UTPCPL

Plaintiffs allege that Defendants have violated the UTPCPL by "lying about the quality of their products" and "engag[ing] in deceptive conduct which created the likelihood that Plaintiffs would misunderstand the nature of the Products…" and that "Defendants['] products were nothing like they were warranted and represented." FAC ¶43. Plaintiffs allege that such actions constituted "unfair or deceptive acts or practices" under the following provisions of the UTPCPL:

> (v) Representing that goods or services have…characteristics, ingredients, [or] benefits…that they do not have…;
>
> …
>
> (vii) Representing that goods…are of a particular standard, quality or grade…, if they are of another;
>
> …
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

Defendants argue that the economic loss doctrine bars Plaintiffs' UTPCPL claim, and that the claim also is not pleaded with the required particularity pursuant to Fed. R. Civ. P. 9(b). Defendants further argue that Plaintiffs fail to allege that they justifiable relied on any of Defendants' alleged wrongful representations. The Court will address the economic loss doctrine first.

Defendants cite <u>Werwinski v. Ford Motor Co.</u>, which held that the economic loss doctrine precludes UTPCL and fraudulent concealment claims for purely economic losses. 286 F.3d 661, 673-74, 681 (3d Cir. 2002). Since <u>Werwinski</u>, the Court notes that many decisions in this District and others within the Third Circuit have been split on whether <u>Werwinski</u> remains binding law. Plaintiffs would have the Court decide that <u>Werwinski</u> has been abrogated by

7

decisions made by the Pennsylvania Superior Court in the intervening years. We decline to do so.

This Court has held that, until the Court of Appeals for the Third Circuit or the Pennsylvania Supreme Court rules otherwise, the Court will apply the economic loss doctrine to UTPCPL claims, particularly where the claims "are plain and obvious restatements of contract-theories." Zemba v. NVR, Inc., 2018 WL 3023220, at *3 n.5 (W.D. Pa. June 18, 2018).[3] As the UTPCPL claim is barred by the economic loss doctrine, the Court will not address the issues of particularity or justifiable reliance by the parties.

### 2. Count II: Breach of Express Warranty

In the FAC, Plaintiffs allege that Defendants made affirmations of fact on labels and marketing materials that created express warranties, such as:

- That the Products were "Biologically Appropriate" (FAC ¶¶12-17, 54);

- That the Products contained "Fresh Regional Ingredients" (Id. at ¶¶12-19, 54);

- That the Products were made from "Ingredients We Love from People We Know and Trust" (Id. at ¶¶14-16, 20, 54);

- That the ingredients in the Products are "fit for human consumption prior to inclusion of the Products" (Id. at ¶¶15-17, 22-29, 54).

---

[3] The Court also notes that as recently as April of this year, the Eastern District of Pennsylvania has found that two post-Werwinski decisions by the Pennsylvania Superior Court holding that the economic loss doctrine does not bar UTPCPL claims (Dixon v. Nw. Mut., 146 A.3d 780, 790 (Pa. Super. 2016) and Knight v. Springfield Hyundai, 81 A.3d 940, 952 (Pa. Super. 2013), cited by Plaintiffs in their briefing) do not constitute persuasive evidence of a change in Pennsylvania law, and that the District Courts would continue to be bound by Werwinski. Bordoni v. Chase Home Fin. LLC, 374 F. Supp. 3d 378, 385 (E.D. Pa. 2019). The Court agrees with this assessment.

Defendants states that this claim fails because Plaintiffs have not pleaded the existence of a warranty or facts that suggest that any of Defendants' statements are untrue. They further allege that even if an express warranty exists, that Plaintiffs have failed to establish justifiable reliance. Under Pennsylvania law, a seller creates an express warranty through "[a]ny description of the goods which is made part of the basis of the bargain." 13 Pa. C.S.A. § 2313 (a)(2). However, such descriptions do not include "affirmation[s] merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods." 13 Pa. C.S.A. § 2313 (b). The Court disagrees with Defendants' opinion that statements such as "biologically appropriate" and "fresh, regional ingredients" (Def.'s Mem. at 19) are affirmations of value or the opinion of the seller. See Reitman, 2019 WL 1670718 at *5. Rather, the Court finds that these constitute an express warranty under 13 Pa. C.S.A. § 2313 (a)(2).

The Court also finds that Plaintiffs have alleged sufficient facts that, construed in their favor, would show that such statements are untrue. FAC at ¶¶17-30 (i.e., that the Products contained expired ingredients, ingredients imported from outside the United States, and consisted of inedible animal byproducts). Defendants' argument that it "did not market that all of its ingredients in its dog food were fresh or regional" is flawed. Def. Mem. at 19.

Defendants' packaging claims that its Products are "FRESH or RAW and preservative-free" and "focus on local ingredients…delivered to our kitchens fresh or raw each day" and "features fresh, raw or dehydrated ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." FAC at ¶¶14-15. Contrary to Defendants' claims, the descriptions as written represent that the Products, as a whole, are "FRESH or RAW and preservative-free" with a special focus on local ingredients. Id. Plaintiffs' allegations, if taken as true, directly contradict such a labeling.

9

Finally, the Court finds that Plaintiffs have pleaded that they saw these statements and relied on them prior to their purchase of Defendants' products. Id. at ¶¶6-7, 56-57 ("Plaintiffs purchased the Products because they believed Champion's representations that they included…fresh, biologically appropriate and regionally-sourced ingredients").

### 3. Count III: Breach of Implied Warranty

In Pennsylvania, the merchantability of goods is an implied warranty in a contract where the seller is a merchant of those goods. 13 Pa.C.S. § 2314(a). To be merchantable, the goods must meet certain terms. Plaintiffs allege that Defendants' Products do not meet the following requirements of merchantability:

(2) in the case of fungible goods, are of fair average quality within the description;

…

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

Id. at § 2314(b)(2), (5)-(6).

Specifically, Plaintiffs argue that the Products fail to meet the "fair average quality within he description" because "they do not contain fresh, regionally sourced, biologically appropriate ingredients and were not made from ingredients fit for human consumption prior to inclusion in Defendants' foods." FAC ¶69. Plaintiffs also argue that the Products "are not adequately contained, packaged and labeled because they are packaged as containing healthy, high-quality, and regionally-sourced ingredients, but instead contain much lower quality ingredients that are not sourced regionally, and were never fit for human consumption." Id. at ¶70.

Defendants argue that this claim fails because Plaintiffs do not allege that the dog food was not merchantable or fit for its ordinary use. Def. Mem. at 20. But that is both a circular

argument and misstates Plaintiffs' alleged injury. As outlined in the paragraph above, Plaintiffs set forth many allegations in the FAC claiming that Defendants failed to conform to 13 Pa.C.S. § 2314. Such allegations, if true, show that Defendants did not sell Plaintiffs merchantable goods. As a result, Plaintiffs' loss is that they purchased items "worth substantially less than the products Defendants promised and represented." FAC ¶72. Defendants' examples in their Memorandum of Law of what Plaintiffs supposedly failed to plead are not persuasive. For instance, Defendants are correct that Plaintiffs "do not plead that their dogs suffered any ill effects"—because that is not the nature of the injury alleged. Def. Mem. at 20. The Court agrees with Plaintiffs that the injury at issue is the allegation that Defendants' Products are not merchantable under the statute and sold far below commercial standards for high-quality dog food. Pl. Opp. at 24.

As to their second argument that Plaintiffs failed to allege that the Products were fit for ordinary use, Defendants further state in that Plaintiffs have not alleged facts "that demonstrate that any specific ingredients were marketed as fresh, regional, biologically appropriate, or fit for human consumption prior to their inclusion and were not so." Def. Reply at 5. The Court disagrees. The FAC provides, for example, labeling of Defendants' Products that claim, "ORJEN features FRESH, RAW, or DEHYDRATED INGREDIENTS, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." ¶14.

This alleges that at least one of Defendants' Products claims that the poultry, fish and eggs included are "minimally processed," are fresh, raw or dehydrated, and "fit for human consumption prior to inclusion" in the Products. The FAC then alleges that "the vast majority of animal ingredients Champion uses arrive with bills of lading clearly designating the material to

11

be inedible and unfit for human consumption…"; that "ingredients are also contaminated with excessive quantities of hair….insects, plastic ear tags from livestock, feathers, and bones…"; and that "ingredients in large part exclude nutritious muscle meats and…are largely composed of inedible animal byproducts…." Id. at ¶¶22, 24-25.

In addition, Defendants provide no legal authority that suggests that Plaintiffs must specifically plead to each ingredient in each product, especially as Defendants' labeling and packaging skews to the general. Taking all factual allegations in Plaintiffs' favor, if Defendants' Products generally contain contaminated and inferior ingredients, it is a reasonable inference that the Products purchased by Plaintiffs also would generally contain contaminated and inferior ingredients.[4]

4. Count IV: Fraudulent Omission

Plaintiffs allege that Defendants had a "duty to disclose to Plaintiffs and other Class members the true quality, characteristics, ingredients and suitability of its Products." FAC ¶79. Plaintiffs state that Defendants had such a duty because "(a) Defendants were in a superior position intellectually regarding the true state of its Products and (b) Plaintiffs and other Class members could not reasonably have been expected to learn or discover that the Products and their ingredients quality were misrepresented prior to purchasing." Id. Plaintiffs further allege that Defendants knew and failed to disclose such. Id. at ¶80.

Defendants argue that the economic loss doctrine bars this claim, and that this claim also is not pleaded with the required particularity pursuant to Fed. R. Civ. P. 9(b). Defendants further

---

[4] Such a conclusion aligns with the way other courts have viewed such claims. See supra n.2.

12

argue that Plaintiffs fail to allege that they justifiable relied on any of Defendants' alleged wrongful representations. The Court will address the economic loss doctrine first.

Plaintiffs cite two Pennsylvania Supreme Court cases, Bilt-Rite Contractors Inc. v. The Architectural Studio and Dittman v. UPMC,[5] decided since Werwinski, to argue that such cases "carv[e] out exceptions to the economic loss doctrine for torts with duties that arise irrespective of a party's contractual relationship and against parties who negligently supply information." Pl. Opp. at 13. While this may be a fair interpretation of the law, the Court does not agree that it applies in this context. The Court also does not find the two Eastern District of Pennsylvania cases cited by Plaintiffs to be persuasive.

The first case, McElwee Grp., LLC v. Mun. Auth. of Borough of Elverson, addresses the policy considerations of Bilt-Rite with respect to a professional such as an engineer or architect intentionally misrepresenting information versus negligently misrepresenting information. 476 F. Supp. 2d 472 (E.D. Pa. 2007). There was no contract or warranty at issue.

Plaintiffs' other citation, Air Prod. & Chemicals, Inc., v. Eaton Metal Prod. Co., is inapposite. 256 F. Supp. 2d 329 (E.D. Pa. 2003). The fraud at issue in Air Products was about the defendant's representation that it had a certain certification, which the plaintiff contended fraudulently induced it to contract with the defendant. Indeed, the court in Air Products is careful to distinguish that type of fraud from the type in Werwinski. Air Products and Chemicals, Inc., 256 F. Supp. 2d at 338 ("[T]here was no fraud in the inducement [in Werwinski] (except to the extent that non-disclosure of the defect could be said to be such) and, moreover, the fraud related precisely to the defective character of the goods purchased.")

---

[5] Bilt-Rite Contractors Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005) and Dittman v. UPMC, 196 A.3d 1036 (Pa. 2018).

13

The Court finds the case cited by Defendants, Whitaker v. Herr Foods, Inc., more applicable to this situation. 198 F. Supp. 3d. 476 (E.D. Pa. 2016). As stated in Whitaker, the economic loss doctrine bars "fraudulent misrepresentation claim[s] intrinsic to the contract or warranty claim. A fraudulent misrepresentation claim is intrinsic to the contract or warranty claim if the representations concern the specific subject matter of the contract or warranty, such as the quality of the goods sold." Id. at 490 (internal quotations and citations omitted).

Plaintiffs have failed to establish how their fraud claim is related to inducement and unrelated to the quality or characteristics of the goods sold. The Court finds that the fraudulent omissions that Plaintiffs allege Defendants made directly connect to Plaintiffs' breach of warranty claims, as they were in Whitaker:

> Here, Plaintiff's fraudulent misrepresentation claim is intrinsic to the contract and warranty claim because it relates to the quality and characteristics of the products purchased from Defendant. When purchasing a snack, Plaintiff presumably had a number of products from which to choose. In deciding, Plaintiff relied on Defendant's representation that its products were 'All Natural.' Plaintiff's economic losses are therefore based on and flow from his loss of the benefit of his bargain and his disappointed expectations as to the products he purchased. This harm is precisely that which a warranty action seeks to redress.

Whitaker, 198 F. Supp. 3d at 491.

All the allegations cited in the FAC relate to the quality or characteristics of the goods sold, such as representations that the Products contained "the fullest expression of…biologically appropriate and fresh regional ingredients…," "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs…" and featured "fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." ¶¶76-77. The Court finds that the fraudulent omission claim is barred by the economic loss doctrine, and the Court will not address the issues of particularity or justifiable reliance by the parties.

### 5. Count V: Unjust Enrichment

Plaintiffs allege that they "purchased Defendants' products to Defendants' benefit and to their detriment because they paid a premium price expecting the goods to conform to the representations on Defendants' labels, on its website and its marketing…" FAC ¶86. They state that at the time of purchase, Defendants "knew of the low-quality ingredients used and the lack of regionally-sourced ingredients" and despite this knowledge, "sold the Products…at a premium price." Id. at ¶87. For these reasons, Plaintiffs argue that it would be unjust and inequitable for Defendants to retain the benefit of the premium price paid while Plaintiffs received an allegedly inferior product. Id. at ¶88. Defendants argue that Plaintiffs have not pleaded facts that establish that it would be inequitable for Defendants to retain any purported benefits conferred.

Under Pennsylvania law, unjust enrichment requires proof of the following elements: (1) that Plaintiffs conferred a benefit on Defendants; (2) Defendants appreciated the benefit; and (3) acceptance and retention of those benefits by Defendants would, under the circumstances, make it inequitable for Defendants to retain the benefit without paying for the value of the benefit. Bral Corp. v. Johnstown Am. Corp., 919 F. Supp. 2d 599, 620 (W.D. Pa. 2013).

Defendants argue that Plaintiffs fail to "plead facts which establish that it would be inequitable for Champion to retain the purported benefits conferred by Plaintiffs." Def. Mem. at 21. The Court disagrees. Plaintiffs make multiple allegations that the Products were inferior in quality yet could cost more than four times as much as other dog food products. FAC ¶1. Plaintiffs conferred a benefit on Defendants by paying a premium for the Products, which they did only because of Defendants' representations about the quality of its Products. Pl. Opp. at 24. As Plaintiffs contend, if their allegations are true, they "did not receive exactly what was advertised" but received something significantly inferior despite the premium prices paid. Id. at

25. Given the significant premium paid and the allegations of inferior quality, the Court finds that Plaintiffs have sufficiently pleaded facts to support their claim that Defendants would be unjustly enriched by retaining the benefits of the premium price paid.

### 6. Count VI: Negligent Misrepresentation

Plaintiffs allege that "[i]ndependent of any contractual relationship between the parties, Defendants had a duty to fairly and accurately disclose and represent their Products on their labels, website, and advertising and marketing literature." FAC ¶90. Plaintiffs state that Defendants "negligently represented, omitted, and concealed from consumers material facts relating to the quality and ingredients of the Products" and were "careless" in making such statements, contravening this duty. Id. at ¶¶91-92.

Defendants states that the economic loss doctrine bars this claim, and that it also was not pleaded with the requisite particularity pursuant to Fed. R. Civ. P. 9(b). Defendants further argue that Plaintiffs fail to allege that they justifiable relied on any of Defendants' alleged wrongful representations. Again, the Court will first address the economic loss doctrine.

Plaintiffs once more attempt to use Bilt-Rite and Dittman to support their claim. As both cases found a cause of action for breaches of duty "arising under common law that is independent of any duty assumed pursuant to contract," (Dittman, 196 A.3d at 1038), Plaintiffs ask the Court to determine that a common law duty of care exists to create a separate cause of action from the contractual claims alleged thus far. Pl. Opp. at 11. Failing that, Plaintiffs ask the Court to create such a duty. The Court declines to do so on both counts.

Again, the Court finds Whitaker v. Herr Foods more persuasive. Whitaker found that a negligent misrepresentation claim about the quality and characteristics of the products

purchased—in that case, snack foods—is different from the scenario contemplated in Bilt-Rite. As a result, the Whitaker court found that the Bilt-Rite exception should not apply.

> Defendant is not in the business of supplying professional information for pecuniary gain. Defendant manufactures and labels snack foods to be sold by third-party distributor to consumers like Plaintiff. The label, of course, supplies information to potential consumers; but the representations on a product's label made by a manufacturer materially differ from the professional representations made by an accountant, lawyer, or architect for pecuniary gain discussed in Bilt-Rite.

Whitaker, 198 F. Supp. 3d at 491-92.

The Court agrees that Defendants are more analogous to the defendant in Whitaker, rather than that in Bilt-Rite. Consequently, the justifications in Bilt-Rite are not applicable.

Plaintiffs' arguments under Dittman also fail. The court in Dittman found a specific carve-out under a negligence theory where a legal duty exists independently from any contractual obligations between the parties. Plaintiffs' argument that "Champion had [an independent legal duty] to fairly and accurately represent its products to consumers" is unsupported by the law. Pl. Opp. at 12. The Court could not find any legal authority to support these claims that such a duty exists. The Court also does not find it appropriate to create a new duty, and notes that all the cases cited by Plaintiffs address situations in which no contractual causes of action lie.

Plaintiffs have alleged no facts or law to suggest that Defendants had an independent duty and not, instead, one related to their warranty claims about the quality and characteristics of the Products. As no independent duty exists, the Court finds that the negligent misrepresentation claim is barred by the economic loss doctrine, and the Court will not address the issues of particularity or justifiable reliance by the parties.

## II. Order

Consistent with the foregoing, Defendants' Motion to Dismiss (**Doc. 36**) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claim that Defendants violated the UTPCPL (Count I) is **DISMISSED WITH PREJUDICE**; Plaintiffs' fraudulent omission claim (Count IV) is **DISMISSED WITH PREJUDICE**; and Plaintiffs' negligent misrepresentation claim (Count VI) is **DISMISSED WITH PREJUDICE**. Defendants' Motion to Dismiss Counts II, III, and V is **DENIED**.

IT IS SO ORDERED.

December 20, 2019

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record